## E. R. DARLINGTON LUMBER COMPANY v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**Division One, February 25, 1909.**

1. **CONSTITUTIONAL STATUTE: Two Views.** If the statute is susceptible of two constructions, one of which renders the law unconstitutional and the other valid, the latter construction will be adopted and the statute upheld.

2. **————: Absurd Construction.** A construction that will make the statute absurd and unreasonable will not be given, for it is to be presumed that such was not the legislative intent.

3. **————: Legislative Intent: Cognate Statute.** The legislative intent and purpose is the thing to be sought, when there is doubt as to the meaning of the language used. That doubt may arise from the statute itself, or from cognate statutes, which must be considered in connection with it.

4. **————: Demurrage Charges: Free Time: Sixty Thousand Pounds Capacity.** The statute providing that the "consignees on whose order a car or cars of less than sixty thousand pounds capacity have been placed," should have forty-eight hours free time for unloading, and seventy-two hours free time "for unloading those of sixty thousand pounds or greater capacity," does not refer to the capacity of the cars to haul sixty thousand pounds more or less, but it means the weight of the freight actually hauled. Whatever may be the capacity of the car, the consignee has forty-eight hours of free time and no more if the lumber shipped weighs less than sixty thousand pounds, and seventy-two hours free time if the lumber weighs sixty thousand pounds or more. In spite of the unfortunate use of the word "capacity," this holding is enforced: 1st, because a contrary view would lead to an absurdity; 2nd, it is the clear legislative intent; and 3rd, it is in harmony with cognate statutes, fixing freight charges by the hundred pounds.

5. **————: ————: ————: ————: Constitutional.** So interpreted, the Demurrage Act of 1905, Laws 1905, p. 109, is reasonable, does not fix an arbitrary and unreasonable classification, and is constitutional and valid.

6. **————: ————: ————: ————: Unreasonable Classification.** If sections 5 and 6 of the Act of 1905, Laws 1905, p. 109, mean that forty-eight hours free time are to be alloted to consignees of cars of less than sixty-thousand pounds capacity, in total disregard of the weight of the shipment, and that seventy-

two hours free time are to be allowed to consignees of cars of sixty thousand pounds or more, in total disregard of whether or not they haul sixty thousand pounds of lumber, then they make an unreasonable and absurd classification of shippers, and therefore would be unconstitutional. But that is not their meaning. The meaning is that forty-eight hours of free time is to be allowed to cars having less than sixty thousand pounds of lumber in them, and seventy-two hours to cars having sixty thousand pounds or more, whatever may be the capacity of the cars.

7. ————: ————: Interstate Shipments: Replevin. Where defendant pleaded that it was entitled under the Demurrage Statute to larger demurrage charges than the shipper tendered before replevying his car of lumber, and bases its defense on that statute, whether pleaded in so many words or by its legal intendment, it cannot contend that the statute does not apply to interstate shipments.

8. ————: ————: ————: ————: Unreasonable Tender. And where defendant pleads to plaintiff's replevin to recover the lumber, that plaintiff tendered only nine dollars demurrage charges whereas defendant was entitled to ten, it does not invoke the application of the Demurrage Statute to the interstate shipments, unless it further pleads that the amount tendered was not a reasonable sum or that the Interstate Commerce Act fixed the demurrage charges at a different sum.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *Henry G. Herbel* for appellant.

(1) Inasmuch as none of the lumber in any of these cars weighed as much as sixty thousand pounds, plaintiff was only entitled to forty-eight hours free time, notwithstanding the lumber may have been loaded in cars of sixty thousand pounds capacity or greater. There ought to be no difficulty in so construing this act. That appears to be the common-sense view of the language of the act. It is not the "capacity" of the car that is unloaded, but the lumber in the car. The word "capacity" was evidently used in

this act in the same sense that the word ''cargo''
is used in marine shipping contracts, and was intended
to mean that the car should be laden to its full carry-
ing capacity, viz., sixty thousand pounds, before the
shipper would be entitled to an additional day's time
for unloading.    Flanagan v. Demarest, 3 Robertson
(N. Y.) 181; Kreuger v. Blanck, 5 Ex. L. R. 183;
Sargent v. Reed, 2 Strange 128; Holy Trinity Church
v. United States, 143 U. S. 459; United States v.
Kirby, 7 Wall. 486; Carlisle v. United States, 16 Wall.
152; State v. Clark, 5 Dutcher (29 N. J. Law) 98;
Kane v. Railroad, 112 Mo. 39; Harrington v. Rail-
road, 71 Mo. 384; Proctor v. Railroad, 64 Mo. 122;
Verdin v. St. Louis, 131 Mo. 163; Vondiest v. Rail-
road, 77 S. W. 633; State v. Crenshaw, 22 Mo. 458;
Railroad v. Schulte, 91 S. W. 806; Guy v. Pond, 101
U. S. 434; Railroad v. Dougherty, 91 S. W. 772; Sams
v. Railroad, 170 Mo. 175; Johnson v. Railroad, 104
Mo. App. 588; State ex inf. v. Term. Assn., 182 Mo.
284; Railroad v. Smith, 173 U. S. 694.    (2) Are the
parts of this demurrage act in controversy here con-
stitutional?    We contend that they are not for the
reason that the legislators have chosen an arbitrary
standard, which has no just relation to the purpose
for which the law was enacted.    In other words, the
mere selection of a sixty-thousand-pound car as a
standard for determining the time that a shipper shall
have to unload the contents of the car, regardless of
its weight, has no reasonable grounds for a basis, and
is discriminatory in its tendencies, and is, therefore,
obnoxious to the equality clause of the fourteenth
amendment to the Constitution of the United States.
Railroad v. Ellis, 165 U. S. 165; Deppe v. Railroad,
36 Iowa 55; Railroad v. Smith, 173 U. S. 694; Stone
Co. v. Railroad, 13 Int. Com. Rep. 569; Yick Wo v.
Hopkins, 118 U. S. 373; State ex rel. v. Ashbrook, 154
Mo. 395.    (3) That this Demurrage Act does not ap-
ply to the interstate shipments in controversy is settled

by the decision of our Supreme Court in State ex inf. v. Railroad, 176 Mo. 713.   See McNeill v. Railroad, 202 U. S. 559; Wilson Produce Co. v. Railroad, 14 I. C. C. 173; Interstate Stock Yards Co. v. Railroad, 99 Fed. 472.

*George V. Reynolds* for respondent.

(1)   It is presumed that the Legislature intended to impart to its enactments such a meaning as will render them operative and effective and to prevent persons from eluding and defeating them.   Accordingly, in case of any doubt or obscurity the construction will be such as to carry out these objects.   Black on Interpretation of Laws, sec. 49, p. 106; The Emily and the Caroline, 9 Wheat. 381; Simmons v. California Powder Works, 7 Colo. 285; Thompson v. State, 20 Ala. 54; Opinion of the Justices, 22 Pick. 571.   (2) Every act of the Legislature is presumed to be constitutional until the contrary is shown, and doubts are resolved in favor of the validity of the act.   Black on Int. of Laws, p. 93.   (3)   The words of a statute are to be taken in their popular meaning unless technical terms or words of art.   (4) Regulation of demurrage charges by a State is within its power.   An agreement or State legislation affecting interstate commerce merely indirectly, is valid.   Hopkins v. United States, 171 U. S. 594; Steamship Co. v. Portwarders, 6 Wall. 31; Munn v. Illinois, 94 U. S. 113; Railroad v. Iowa, 94 U. S. 163; Peck v. Railroad, 164 U. S. 177.   (5)   A State can enact such regulations, at least with respect to a railroad corporation of its own creation, as are not directed against interstate commerce, but which only incidentally or remotely affect it, and are reasonably designed to subserve the convenience of the public. Railroad v. Ohio, 173 U. S. 308.   (6) The Interstate Commerce Commission has no jurisdiction over demurrage charges fixed by a State after delivery to the consignee has been completed.

GRAVES, J.—Plaintiff, a manufacturing business corporation under the laws of Missouri, brings this action in replevin to recover from defendant, a railway corporation under the laws of Missouri, the possession of certain specifically described lumber of the alleged aggregate value of $1,037.50, and contained in four cars, specifically described in the petition. In the complaint it is not only alleged that the defendant had wrongfully detained said lumber, but that "said detention is wrongful, malicious, willful and oppressive," and judgment is asked for the recovery of said lumber, together with $1,000 for the wrongful detention thereof, and also for $3,000 punitive damages and costs.

By answer the defendant first specifically denied that it had or at the institution of the suit was wrongfully detaining said lumber, but pleaded the facts as to the detention of the lumber by it. The answer then pleads the facts specifically as to each carload of the lumber. Two of the cars were intrastate shipments, and two of them interstate shipments.

As to the first car in question, the answer says:

"Now comes said defendant and for its second amended answer, by leave of court filed, to the petition in the above-entitled cause, denies that at the time this suit was instituted, or at any time, it wrongfully detained from plaintiff any of the lumber described in said petition.

"Avers that it is a common carrier of freight for hire in the city of St. Louis, and State of Missouri, and is also engaged in switching cars containing freight delivered to it by connecting common carriers at St. Louis, Missouri, for delivery to consignees thereof on private switch tracks connecting industries, located on or near its tracks, such as plaintiff's; that on the 17th day of June, 1905, it received at St. Louis, Missouri, for delivery to plaintiff on its private switch track in its lumber yards in said city, at Chouteau

and Vandeventer avenues, from the Terminal Railroad Association of St. Louis, a connecting common carrier, a carload of yellow pine lumber in car No. 18894, St. Louis & Southwestern Railroad, which had been shipped to plaintiff by the consignor thereof from Pineville, Louisiana, a station on the Louisville Railway & Navigation Company's railway, which said car had a capacity of 60,000 pounds and the lumber therein weighed 45,000 pounds; that on receipt of said car loaded with lumber, from the Terminal Railroad Association of St. Louis as aforesaid, this defendant served a written notice on the plaintiff herein in the city of St. Louis, on the 17th day of June, 1905, and before 5 o'clock p. m. of said day, informing said plaintiff that said car of lumber was on hand in its yards at St. Louis, and was ready to be delivered to plaintiff at that time for unloading, or other disposition, and that at said time the switch track in plaintiff's yard aforesaid was occupied by other cars, so that a delivery of said car to plaintiff, on said track, at that time, could not be effected by defendant, and that unless directions for disposition of said car were given by plaintiff to this defendant within forty-eight hours after 7 a. m. of June 21, 1905, a demurrage charge of one dollar per day, or fraction of a day, would be assessed and charged against said plaintiff, by this defendant, for the detention and use of said car by plaintiff; that it was unable to place said car on plaintiff's said switch track on account of said track being occupied by other cars consigned to plaintiff from the time said notice was given to plaintiff until July 1, 1905, when plaintiff requested defendant to place said car on said switch and tendered to it nine dollars, being for nine days, at the rate of one dollar per day, for the demurrage charges accrued thereon from 7 a. m., June 21, 1905, to July 1, 1905, inclusive, on a basis of seventy-two hours free time. That defendant refused to accept said nine dollars in

full payment and satisfaction of the demurrage charges that had accrued on said car and deliver said car to plaintiff, because it claimed that there were ten days' demurrage charges due it on said car at the rate of one dollar per day from said 7 a. m., June 21, 1905, to July 1, 1905, inclusive, on the basis of forty-eight hours free time, under its rules and the laws of the State of Missouri, then in force; that plaintiff refused to pay said demurrage charges to defendant, and defendant refused to deliver said car to plaintiff until said demurrage charges were paid, and said car remained in the possession of defendant until taken out of its possession on July 11, 1905, by the sheriff of the city of St. Louis, in pursuance of the order of delivery issued by this Honorable Court in this case; that from the first day of July to said 11th day of July, 1905, there had accrued on said car, demurrage charges of seven dollars, being for seven days at the rate of one dollar per day, which plaintiff also refused to pay defendant.''

We shall omit what is said of the other three cars for the same questions of facts are pleaded and the same laws invoked. That is to say, for all practical purposes the allegations may be said to be the same. Such differences as may occur to be necessary will be noted later, if required.

The answer then thus concludes:

''For further answer and defense herein, defendant says sections 5 and 6 of the act of the General Assembly of the State of Missouri entitled, ''An act to regulate demurrage and storage charges, and to prevent delays in furnishing cars, and in the transportation and delivery by railroads of freight other than grain, live stock, coal or coke from the mines or ovens, and perishable freight,'' approved April 12, 1905 (Laws 1905, page 109), under which plaintiff claimed, and claims, the right to the possession of the lumber aforesaid, are unconstitutional and void; that

said sections of said act are in violation of and in conflict with section 1, article 14, of the Constitution of the United States in that they deprive this defendant of its property without due process of law, and in that they deny to the defendant the equal protection of the laws.

"That said sections of said act are in violation of and in conflict with section 30, article 2, of the Constitution of the State of Missouri, in that they deprive this defendant of its property without due process of law.

"That said sections are in violation of and in conflict with section 53, of article 4, of the Constitution of the State of Missouri in that they grant to a class of persons of which plaintiff was one, a special exclusive right, privilege and immunity.

"That said sections are in violation of and in conflict with sections 12, 14 and 23 of article 12 of the Constitution of the State of Missouri, in that they cause a discrimination, which is prohibited by said sections of said Constitution in this, that they give to a shipper or consignee, whose lumber is transported in a car of 60,000 pounds or greater capacity, and which lumber weighs less than 60,000, twenty-four hours longer free time to unload it, than they give a shipper or consignee of lumber of the same weight which is transported in a car of less than 60,000 pounds capacity.

"That said sections of said act are in violation of and in conflict with sections 1, 2 and 3 of a statute of the United States, entitled, "An Act to Regulate Commerce" (commonly known as the Interstate Commerce Act), approved February 4, 1887 (24 U. S. Statutes at Large, pages 379, 380), in that they cause a discrimination, which is prohibited by said sections of said statute in this, that they give to a shipper or consignee whose lumber is transported in a car of 60,000 pounds or greater capacity, and which lumber

weighs less than 60,000 pounds, twenty-four hours longer free time to unload it, than they give a shipper or consignee of lumber of the same weight if transported in a car of less than 60,000 pounds capacity.

"That said sections of said act are in violation of and in conflict with that part of section 8 of article 1 of the Constitution of the United States which gives to Congress the power to regulate commerce among the several States, and unlawfully imposes a burden on such commerce.

"Wherefore, defendant denies that it is liable to plaintiff for, or on any account, or in any amount, as claimed by the plaintiff in said petition."

To this answer the following demurrer was filed:

"Now again comes plaintiff and demurs to the second amended answer filed in said case—and for cause, says:

"First. The matter and facts in said second amended answer, and in each and every paragraph thereof, constitute no defense in law to plaintiff's action.

"Second. The matters and facts set out in each and every paragraph of said second amended answer show on their face that the defense of the defendant is contrary to the provisions of an act of the General Assembly of the State of Missouri, entitled, "An act to regulate demurrage and storage charges, and to prevent delays in furnishing cars and in the transportation and delivery by railroad of freight other than live stock, coal and coke from the mines or ovens and perishable freight," which act was approved April 21, 1905, and was in effect on and after June 16, 1905, and particularly contrary to sections 5 and 6 of said act.

"Third. The matters and facts in the first paragraph of said amended answer constitute no defense in law to defendant, for the reasons set out in the second ground of demurrer.

"FOURTH. The matters and facts in the second paragraph of said second amended answer constitute no defense in law to defendant for the reasons set out in the second ground of demurrer.

"SIXTH. The matters and facts in the fourth paragraph of said second amended answer constitute no defense in law to defendant for the reasons set out in the second ground of demurrer.

"SEVENTH. The matters and facts in the fifth paragraph of said second amended answer constitute no defense in law to defendant for the reasons set out in the second ground of demurrer.

"EIGHTH. The matters and facts set out by said defendant in that part of its second amended answer in which it claims that sections 5 and 6 of the act of the General Assembly of the State of Missouri of April 12, 1905, are unconstitutional and void and that said sections of the said act are in violation of and in conflict with section 1, article 14, of the Constitution of the United States in that said sections deprive the defendant of its property without due process of law and that they deny to the defendant the equal protection of the law, constitute no defense at law to this action.

"NINTH. That part of said second amended answer which pleads that said sections of said act are in violation of and in conflict with section 30, article 2, of the Constitution of the State of Missouri, in that they deprive defendant of its property without due process of law, constitutes no defense at law to this action.

"TENTH. That part of said second amended answer which sets up and claims that said sections are in violation of and in conflict with section 53, article 4, of the Constitution of the State of Missouri in that they grant to a class of persons of which plaintiff is one, a special exclusive right, privileges and immunity, constitutes no defense at law to this action.

"ELEVENTH. That part of said second amended answer that sets up and claims that the said sections of said act are in violation of and in conflict with sections 12, 14 and 23, of article 12, of the Constitution of the State of Missouri, in that they cause a discrimination which is prohibited by said sections of said Constitution, in that they give to a shipper or consignee whose lumber is transported in a car of 60,000 pounds or greater capacity, and which lumber weighs less than 60,000 pounds, twenty-four hours longer free time to unload it than ,they give a shipper or consignee of lumber of the same weight which is transported in a car of less than 60,000 pounds capacity, constitutes no defense at law to this action.

"TWELFTH. That part of said second amended answer which sets up and claims that said sections of said act are in violation of and in conflict with sections 1, 2 and 3 of the act of Congress entitled, "An act to regulate commerce," commonly known as the 'Interstate Commerce Act,' in that they cause a discrimination which is prohibited by said sections, constitutes no defense at law to this action.

"And plaintiff demurs to that part of said second amended answer which sets up 'that said sections of said act are in violation and in conflict with that part of section eight of article one of the Constitution of the United States which gives to Congress power to regulate commerce among the several States, and unlawfully imposes a burden on said commerce,' for the reason that the same constitutes no defense to this action.

"Whereon plaintiff prays the judgment of the court."

This demurrer was sustained, and the defendant refusing to plead further, the cause was submitted to the court without the intervention of a jury. The court found the issues for the plaintiff as to the right of possession of the lumber, and in favor of plaintiff for

one cent damages and for costs, and so reads the judgment. From this judgment the defendant appeals.

Defendant says there are the following three questions presented by the record:

"FIRST. Did the court err in holding that the plaintiff was entitled to seventy-two hours free time to unload the cars in controversy, simply because the lumber was loaded in cars of sixty thousand pounds capacity or more, although the lumber in none of the cars weighed as much as sixty thousand pounds?

"SECOND. Are the parts of the Demurrage Act in controversy here constitutional?

"THIRD. Does this Demurrage Act apply to interstate shipments?"

These three questions we take in their order.

I. The first point raised, supra, calls for a construction of the following sections of the Act of 1905, commonly known as the Demurrage Law:

"Section 5. Shippers or consignees on whose order a car or cars of less than sixty thousand pounds capacity have been placed for loading or unloading, shall have forty-eight hours for loading or unloading such cars, and seventy-two hours for loading or unloading those of sixty thousand pounds or greater capacity, computing time from first seven o'clock a. m. after such car or cars have been placed subject to such order and thereafter a demurrage charge of not more than one dollar per car per day, or fraction of a day, may be assessed and collected on all such cars respectively as have not been tendered to the railroad company, with shipping instructions for loaded cars, within said respective periods of forty-eight and seventy-two hours of free time: Provided, however, should such shipper or consignee fail to begin loading or unloading within forty-eight hours after the expiration of free time the railroad company may consider the empty car or cars released, and may assess

and collect on every car, loaded or empty, one dollar covering the demurrage then due; and railroad companies shall not be compelled to furnish cars for future shipments to persons in default as to the payment of the demurrage charges herein provided for until such demurrage charges shall have been paid; and provided, further, that when by reason of delay and irregularities on the part of the railroad company in filling orders for cars, or in the transportation or delivery of freight, cars are bunched in excess of the capacity of the shipper to load as indicated in his application or of the consignee to unload, such shipper or consignee shall have separate and distinct periods of free time in which to load or unload, as the case may be, the car or cars specified in each separate application, or in each bill of lading or way bill of different dates.

''Sec. 6. When the consignee or his agent is personally served with notice of the arrival of freight at or before 5 o'clock p. m., of any day, free time shall begin at 7 o'clock a. m. of the day after such notice has been given: Provided, further, that when consignors ship goods consigned to order, but express in their bills of lading or shipping directions the name of a person at destination whom to notify, it shall be the duty of the railroad company to give such notice to such party in the same manner as if the shipment had been made directly to him.''

The controversy arises out of the use and meaning of the word ''capacity'' as found in section 5, supra. Plaintiff contends that the word refers to the car itself without reference to the weight of the load in the car. In other words carrying plaintiff's contention to its extreme limit, it is contended that if the car used has the capacity to hold and carry 60,000 pounds of freight, and such car is in fact loaded with but 1,000 pounds of freight, the consignee would have the legal right to demand seventy-two hours in

which to remove that 1,000 pounds of freight, before being subjected to the payment of demurrage at the rate of one dollar per day, for additional time.

On the other hand, the defendant claims that the word "capacity" as in the statute used, has reference to the load or weight of the load in the car, rather than to the actual carrying ability, strength or dimensions of the car.

So that this point stands solely upon what was the legislative intent in the use of this word in this connection, and when taken in conjunction with other cognate statutes as to freight rates.

By section 1193, Revised Statutes 1899, we have a classification of freight. Under this section lumber, lath and shingles in carloads are given a class to themselves, i. e., class G. By section 1194, Revised Statutes 1899, as amended by Act of 1905, Laws 1905, p. 102, the maximum freight rates are fixed. As to lumber, lath and shingles, the law reads:

"Class G, in car loads of 30,000 pounds minimum weight, not exceeding five cents per one hundred pounds for the first twenty-five miles, and not exceeding one-half cent per hundred pounds for the second twenty-five miles, or fractional part thereof, and not exceeding one-half cent per hundred pounds for each additional twenty-five miles, or fractional part thereof."

It should be borne in mind that the Demurrage Law was passed at the same term of the Legislature and went into effect on the same day as did these maximum rate laws, i. e., June 16, 1905. It will also be noticed that the freight rate is fixed at so much per hundred pounds, and that it remains the same whether 30,000 or 60,000 pounds of freight is shipped in the car. With the laws before us the chief purpose of the court is to find and declare the meaning and legislative intent thereof. If the statute (or the words thereof) is susceptible of two constructions, one of

which renders the law unconstitutional, and the other makes it valid, the court should adopt the latter. In such case a construction should be given as will uphold the law. [Lewis's Sutherland on Statutory Construction, sec. 516; State ex rel v. Railroad, 105 Mo. App. 213; Sedalia ex rel. v. Smith, 206 Mo. l. c. 363; Swift v. Topeka, 43 Kan. 671, and cases cited.]

Nor should we give the statute such construction as would make it unreasonable and absurd, for it is to be presumed that such was not the legislative intent. And after all the legislative intent and purpose is the thing to be sought, when there is doubt as to the meaning of the language used. This doubt may arise from the statute itself or from cognate statutes, which must be considered therewith. [Perry v. Strawbridge, 209 Mo. 621, and cases cited; Thompson v. State, 20 Ala. l. c. 62.]

In the latter case it is well said: "If it be said the letter of the statute is opposed to this view, and that the restriction against opening the road through an enclosure, while there is a crop growing thereon, is general, we reply that an interpretation should never be adopted which would defeat the purpose of the statute, if any reasonable construction may be given to it (9 Wheat. 381); and that the literal interpretation of an act is not always that which either reason or the law approves. The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not infrequently met with, often require the court to look less at the letter or words of the statute than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law-giver."

It is a matter of common observation that railway companies mark in large figures upon their cars the estimated capacity thereof. This estimated ca-

pacity is no doubt determined by the strength and size of the car.

Now did the Legislature intend that the consignee should have seventy-two hours time in which to unload 30,000 pounds of lumber, the minimum load under the act, when such lumber was loaded in a car having a carrying or estimated capacity of 60,000 pounds, and only forty-eight hours to unload 30,000 pounds of the same kind of lumber, when loaded in a car having a carrying or estimated capacity of only 40,000 pounds? Such is plaintiff's contention. In other words, looking through plaintiff's glasses, the consignee, receiving two cars of lumber of the character above described, must unload the 30,000 pounds of freight out of one in forty-eight hours, but to unload the same 30,000 pounds of freight from the other he is to have seventy-two hours. Presumably he is allowed, in plaintiff's view of the law, the additional twenty-four hours to gaze at the big white words, "Estimated Capacity, 60,000 pounds," painted upon the side of the car. It requires no more time to remove the same amount out of a smaller car. Indeed, it should take less, for the car not being full, the workmen could no doubt handle the freight with more ease. It seems almost ridiculous to say that the Legislature by this law meant to say that seventy-two hours should be allowed to remove the freight (same in amount) from a large car, when only forty-eight hours is allowed for the smaller car. What has been said as to unloading applies with equal force to loading the car, for the statute covers both. Why should a shipper be allowed seventy-two hours "free time" as it is termed, to put 30,000 pounds of lumber in a car having a capacity of 60,000 or more pounds, and another shipper have only forty-eight hours to put 30,000 pounds of lumber in a car having a carrying capacity of only 50,000 pounds? Is there sense or reason in such a distinc-

tion or difference? Did the Legislature intend such an unjust, unreasonable and absurd distinction? We think not.

The language used may be unfortunate, but when taken in connection with the cognate laws passed at the same session with reference to the freight which can be collected by the railway company on this class of freight, it is evident that the word "capacity" has reference to the load to be placed in or taken from the car and not the mere estimated capacity of the car itself. The latter is uncertain and only estimated, whilst the former is or can be made certain and definite. What weight in freight a car will actually carry is at most but an estimate, but the weight of the freight to be loaded thereon or taken therefrom is a certainty or can be made so. It is to be presumed that the legislative mind was acting upon the definite and certain, rather than the mere speculative.

The language may be of doubtful meaning, yet we should give a construction consonant with the common sense of the thing. Unfortunate expressions and verbiage often appear in statutes, but if such expressions can be given a meaning which comports with the evident legislative intent, and which will render the statute valid and constitutional, rather than invalid and unconstitutional, that construction should be adopted. As above said, we are of the opinion that the Legislature had reference to the weight of the load to be placed in or removed from the car, rather than the actual carrying strength and capacity of the car. Such a construction makes the law valid and not subject to the darts of constitutional objections. Such a construction sounds in common sense. Such a construction comports with reason, and all these things the Legislature is presumed to have had when passing the law. Not only so, but the justice of the thing speaks out. Why should a consignee, having only 30,-000 pounds of freight to remove from a car be allowed

twenty-four hours of additional time to hold out a car from the public service? The general public have an interest in the question. There are times when vast amounts of freight are to be removed and the rolling stock of a railroad is overtaxed by the demands of shippers, yet are we to say that the Legislature intended that a consignee having 30,000 pounds of lumber to be removed from a car that chanced to have a carrying strength or capacity of 60,000 pounds, could withhold that car from public use for twenty-four hours of additional time? The Legislature never intended such an incongruity and we will not so declare. Why fix the demurrage charges upon one basis and the freight rates upon another? These are cognate statutes and passed at the same legislative term and must be considered together, in determining the meaning of either.

The trial court erred in holding that the plaintiff had seventy-two hours of "free time" upon either of the cars in question.

II.   But if this statute is to be construed literally and within its strict letter, then we say it is violative of constitutional provisions, both State and Federal. That the State has a right within certain limits to regulate demurrage charges is not seriously disputed, nor could it be.

If, however, this statute must be construed to mean that the amount of free time allowed to load and unload is to be measured solely by the dimensions and carrying ability of a car, rather than upon the amount of freight to be loaded into, or unloaded therefrom, then such standard is one arbitrarily fixed, and one not having a reasonable basis upon which to stand, considering as we must, the whole subject-matter to which the legislation applies.

Our esteemed late brother BLACK, J., in State v. Loomis, 115 Mo. l. c. 314, said: "But classification

for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. Thus the Legislature may fix the age at which persons may be deemed competent to contract for themselves, but no one will claim that competency to contract can be made to depend upon stature or color of the hair. Such a classification for such a purpose would be arbitrary and a piece of legislative despotism, and therefore not the law of the land.''

And to the same effect is the language of Mr. Justice BREWER, in Railroad v. Ellis, 165 U. S. l. c. 155, wherein he says: ''But it is said that it is not within the scope of the Fourteenth Amendment to withhold from States the power of classification, and that if the law deals alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection. While, as a general proposition, this is undeniably true (Hayes v. Missouri, 120 U. S. 68; Railroad v. Mackey, 127 U. S. 205; Walston v. Nevin, 128 U. S. 578; Railroad v. Pennsylvania, 134 U. S. 232; Pacific Express Co. v. Seibert, 142 U. S. 339; Giozza v. Tiernan, 148 U. S. 657; Railroad v. Wright, 151 U. S. 470; Marchant v. Railroad, 153 U. S. 380; Railroad v. Mathews, 165 U. S. 1); yet it is equally true that such classification cannot be made arbitrarily. The State may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must al-

ways rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.''

As said in Yick Wo v. Hopkins, 118 U. S. 373-4: ''Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. This principle of interpretation has been sanctioned by this court in Henderson v. Mayor of New York, 92 U. S. 259; Chy Lung v. Freeman, 92 U. S. 275; Ex parte Virginia, 100 U. S. 339; Neal v. Delaware, 103 U. S. 370; and Soon Hing v. Crowley, 113 U. S. 703.''

So in the law under consideration. Railway companies are obliged to furnish cars, within a certain time, after an order has been made therefor. This is statute law. But even without statute, as public servants there is an obligation. If, in obedience to the law, they take from their stock of equipment one car of 50,000 pounds capacity, and turn it over to A at station X, and in obedience to the same law, they turn over to B at the same station a car of 60,000 pounds capacity, and if both A and B have but 40,000 pounds of lumber to load, one gets seventy-two hours and the other only forty-eight. And if the two cars are sent to the same consignee, on the one seventy-two hours is allowed to unload, whilst on the other only forty-eight hours is required. Thus the railroad company loses two days' use of its car. By the use of the car, the company makes its money. Such use is its stock in trade. In other words such use is its property right. Of this right it is arbitrarily deprived by the literal construction of the law before us. Not

only is this true, but the individual shipper, Mr. A., who got the small car, is discriminated against by the terms of the act. He had as much lumber to load as did Mr. B., but by force of the car demand he received a smaller car and must load in less time. The illustration shows that the law not only discriminates as between shippers, but deprives the corporation of a property right, i. e., the use of its car for two days. Not only so, but in the push of business, in crowded shipping periods, as we all know occur, and when railways are pushed to meet the public demand, it robs the public of a right to promptly receive cars.

However, we prefer to give the statute the construction indicated in the preceding paragraph, rather than subject it to the constitutional inhibitions.

III. It is next urged that our statute has no application to two of the cars in question, because such cars were used in an interstate shipment. It is contended that as to such cars, our law, if otherwise valid, would be an interference with interstate commerce, and thus violative of the interstate commerce clause of the Federal Constitution. We do not feel called upon to discuss this question under the pleadings in this case. The petition is along the general lines of an ordinary petition or complaint in replevin. As to the two cars coming from points outside of this State, the defendant answers by alleging that it holds them on account of a failure of plaintiff to pay certain demurrage charges. As to these demurrage charges the first count of the answer alleges all the necessary things to bring the defendant within the terms of our Demurrage Act. In other words, whilst not calling it by name, the answer pleads as a defense our Demurrage Act.

It adopts and pleads the notice which is required by the act. It adopts as its demand the exact sum of money to which it would be entitled under our act, according to defendant's construction of the act, and

according to the construction which we have given the act in our paragraph one. The whole tenor of the first count in the answer is to plead that defendant was entitled to so much money as demurrage on each car under our Demurrage Act, but that defendant only tendered amounts, short by one dollar, as to each car.

It is true that in the second count of the answer the Federal and State Constitutions are invoked, and the Federal and Commerce Act is invoked, and it is alleged that these statutes are violative of each and all, but what as to the other averments in this second count? It must be remembered that this is an action in replevin; that the answer admits the property right to be in plaintiff, but simply seeks to assert a lien. Suppose we eliminate from the answer, in so far as the two interstate cars are concerned, the first count, then how does the second count measure up as a defense in a replevin suit? Suppose we grant that the law is violative of all the constitutional provisions charged, and that there is no valid demurrage law, then how stands the case on the pleadings? The answer specifically alleges a certain tender of demurrage as to each car, but there is no allegation that the amount so tendered was not a reasonable sum for such charges. Nor is there any allegation that the sums tendered did not meet the amounts allowable under the Federal regulations, if, in fact, there are or were any such regulations. If there was no valid demurrage law in this State this count of the answer should have so alleged, as it in effect did, and should have further alleged that the sum tendered was not a reasonable amount for said charges, or if the defendant was relying upon some Federal regulation, which had fixed such charges, and the amount tendered was, not sufficient, then this part of the answer should have so alleged. Without some such allegations as we have

suggested, the demurrer was well taken as to the second count of the answer.

In our second paragraph we do discuss the law as it might be affected by constitutional provisions, but that was only in justification of the construction we had given it in the first paragraph.

We shall reserve a discussion of the question as to whether or not our law is violative of the commerce clause of the Federal Constitution, until it faces us in a concrete case. In this case the question is not raised in the first count of the answer. The second count of the answer is lacking in necessary averments, to constitute a good defense, even granting that the law should be held to be violative of the constitutional provisions pleaded. Such portion of the answer not only does not say that the amount tendered was not a reasonable sum for the demurrage, but it fails to aver that the amounts claimed were reasonable demurrage charges. And then, as above suggested, if there was an interstate commerce regulation, and the amounts were insufficient to meet the same, there is no such allegation.

For the reasons assigned in our first paragraph the case will be reversed and remanded to be retried in accordance with the views herein expressed.

All concur.