Bever v. Smith.

ELMON BEEVER, Appellant, v. T. J. SMITH, Respondent.

Springfield Court of Appeals, November 25, 1918.

1. **ANIMALS: Stock Law Districts: Enlargement.** The provisions of section 787, Revised Statutes 1909, as to enlarging a body of five or more townships having theretofore adopted the stock law by adding one or more townships adjoining thereto in the same or an adjoining county, have reference to the time when such addition is to be made and the body to be enlarged need not be the original body adopting such law nor be composed of townships all of which are in one county.

2. ——: ——: ——. Under section 787, Revised Statutes 1909, county lines are not a barrier to enlarging stock law districts of five or more townships and since several townships in another county, joining each other and adjacent to an existing stock law district in any county, may collectively join such existing district at one election, such township may join *seriatum* at different elections.

3. ——: ——: **Organization.** Under Revised Statutes 1909, section 787, providing for enlarging stock law districts of five or more townships in one body in any county, all townships to be affected by any one election must be in the same county, whether voting as the orginal unit of five townships or as additions.

4. **STATUTES: Construction: Legislative Intent.** Any construction of a statute which makes it unreasonable and leads to absurdities is to be avoided.

Appeal from Howell County Circuit Court.—*Hon. E. P. Dorris*, Judge.

AFFIRMED.

*Barton & Impey* for appellant.

*Lamar, Lamar & Lamar* for respondent.

STURGIS, P. J.—This is a suit in replevin involving the possession of certain hogs. The defendant concedes plaintiff's ownership of the hogs and justifies his detention of same on the ground that such hogs

were running at large and trespassing contrary to the law restraining domestic animals from running at large claimed by defendant to have been legally adopted and then in force in Sargent Township, Texas County, where such hogs were taken up by defendant. Both parties agree that the only point involved is whether the stock law, as it is called, was at such time in force in such township; and this point is further narrowed by the conceded facts to the question of the right of Sargent Township voting alone to adopt such law by reason of its joining a body of five or more townships having theretofore adopted such law. The trial court held that the stock law had been legally adopted in Sargent Township and was in force there and entered judgment for defendant.

The question at issue involves the construction of section 787, Revised Statutes 1909, which reads:

"Adjoining Townships, Vote on Proposition, When. —Whenever any five or more townships in one body in any county in the State of Missouri have heretofore adopted the laws governing the question of restraining (domestic animals), as provided in this article, then any one or more townships that have not adopted said law and that are adjoining said five or more townships in the same or an adjoining county, by a petition of twenty-five householders of each township desiring to adopt said law, petition the county court for the privilege to vote on the question of restraining (domestic animals) from running at large, the same laws governing counties are hereby applied to said township or townships, and said petitioners shall not be debarred the right to restrain said animals if a majority of the qualified voters, voting on the question of restraining said animals, at any regular or special election in said township or townships, vote in favor of restraining said animale." [R. S. 1899, sec. 4790; amended, Laws 1909, p. 120.]"

Section 779, Revised Statutes 1909, provides for the adoption of the stock law by any entire county. Section 784, Revised Statutes 1909, provided for the adoption of

such law by "any five or more townships in one body in any·county."

The agreed facts here show that Greene County first adopted the stock law in 1896. Thereafter, beginning in 1906, the townships in Webster County, which adjoins Greene on the east, by groups and singly adopted the stock law at successive elections by way of enlarging the then existing stock law territory until in 1910 all the townships (12) of said county except one had put such law in force. Thereafter in Wright County, which adjoins Webster on the east, the townships .by groups or singly, so as to further enlarge the stock law territory, adopted the stock law at successive elections until in 1915, six townships, constituting the south half of Wright County, had put such law in force. Thereafter in Texas County, which adjoins Wright on the east, Clinton Township, being the southwest township of Texas County and adjoining the six townships of Wright County which had theretofore adopted such law, duly adopted the stock law. Thereafter Burdine Township in Texas County, then including what is now Sargent Township and which joined Clinton Township on the east, duly adopted the stock law (provided of course it could do so under the law above quoted). As Burdine Township included Sargent Township, we speak of the stock law being adopted by Burdine Township rather than Sargent.

It will be noticed that when Burdine Township adopted the stock law only one other township (an adjoining one) in the same county (Texas) had adopted such law and that township (Clinton) had done so on the theory that it could do so because it adjoined a body of five or more townships in Wright County which had therefore adopted such law. Burdine Township, Texas County, does not adjoin any township in Wright County, and in order to make a body of five or more stock law townships to which it does adjoin, Clinton township in Texas County must be grouped with the adjoining townships in Wright County. Plaintiff contends that the law above quoted does not permit this—

his contention being that the statutory language, "whenever five or more townships in one body in one county" have adopted the stock law then one or more townships adjoining the same may be added thereto, by its plain terms restricts the five or more townships, making up the unit to be enlarged, to those in one county; and that the township to be added, though in another county, must adjoin such unit of five townships all in one county.

It may be that a strict and literal reading of the statute quoted bears this construction, but such construction so narrows and restricts its practical application as to almost nullify it. Certainly the enlargement of the original unit of five or more townships is not to be restricted to the addition thereto of only such townships as immediately adjoin such original unit. If so, such restriction applies to all townships not adjoining the original unit whether in the same or in adjoining county, for the statute by its terms permits the addition of other townships "that are adjoining said five or more townships in the same or an adjoining county." When the statute speaks of "five or more townships in one body that have heretofore adopted the law" it speaks as of the time when another township or townships desire to be added; and the body of five or more townships, to which the addition is to be made, may be made up of five or more townships which voted as the original unit, or include townships added thereto at later elections. Since additions may be made of townships in the same or an adjoining county and the enlarged body then becomes the body of five or more townships to which another addition may then be made, it must be that such enlarged body may include townships in more that the original county.

Another consideration leads to the same result. It must be conceded that where a unit of five or more townships joins another county, then any number of townships in such other county may by proper procedure join themselves thereto at an election held for that purpose; for, the statute says that "any one or more townships that have not adopted said law and that are

adjoining said five or more townships in the same or an adjoining county," may petition, etc. Where a number of townships, whether in the same or in an adjoining county, desire to join an existing unit, it is certainly not necessary that *each* of such townships adjoin the unit to be enlarged, but only that the territory covered by the new addition be in one body and *such territory* adjoin the unit to be enlarged. Such is the obvious meaning of the statute. If several townships in Texas County, including Clinton and Burdine, the territory of which would have adjoined the body of five or more townships in Wright County which had theretofore adopted a stock law, could have joined as one addition to such existing unit, it would be absurd to say that such additional townships could not singly and by separate election accomplish the same result.

The history of the several provisions of the stock law shows that the construction we are giving this statute accords with the legislative intent and accomplishes the result sought for. The original act providing for restraining domestic animals from running at large provided for its adoption only by counties as a unit. Later an act was passed authorizing a body of not less than five townships to adopt such law and for obvious reasons connected with the calling and holding of elections, the five or more townships voting at one time must be in the same county. No provision was then made for enlarging or adding other townships to such closed territory, but the Legislature soon thereafter provided that whenever there was an existing stock law territory of five or more townships, then if any one or more adjoining townships desired such stock law, the territory might be enlarged by adding such township or townships; and this was expressly allowed whether such additional township or townships were in the same county or an adjoining county. County lines were not to be a barrier to the enlargement of existing stock law territory, and when once the county line is crossed there is no sense in erecting a barrier at the boundary line of the first row of townships.

The obvious purpose of the Legislature was to permit the growth of any stock law area by adding adjoining townships singly or in groups, provided the whole area was kept in one body. From the necessity of the case, all the townships to be affected by any one election must be in the same county, whether voting as the original unit or as additions thereto, and this doubtless is what was intended by the term "in any county."

The constructions which we are giving the statute in question accords with the primary rule of interpretation of statutes so as to effectuate the true intent and meaning. [Laws 1917, page 234; 36 Cyc., 1110d and 1108c; Endlich on Interpretation of Statutes, section 245; Lumber Co. v. Railroad, 216 Mo. 672, 116 S. W. 530.]

Any construction of a statute which makes it unreasonable and leads to absurdities is to be avoided. [Endlich on Interpretation of Statutes, section 295 and 264; State ex rel. v. Forrest, 177 Mo. App. 252, 162 S. W. 706.]

This construction is also in accord with the practical construction placed on this statute by all those having to do with the adoption of the stock law in Webster, Wright, Texas and doubtless many other counties and to restrict the scope of the statute in accordance with plaintiff's contention would upset the settled conditions in many counties with respect to the restraint of domestic animals. The judgment of the trial court is therefore affirmed.

*Farrington* and *Bradley JJ.*, concur.