W. S. EMBREE et al., Appellants, v. KANSAS CITY
& LIBERTY BOULEVARD ROAD DISTRICT
et al.

In Banc, April 13, 1914.

1. **BENEFIT ROAD DISTRICT: Special Taxes.** Special taxes
   or benefits, such as are authorized by article 7 of chapter
   102, R. S. 1909, to be levied against land in a benefit road
   district, are not public taxes within the meaning of the con-
   stitutional provisions authorizing the levy and collection of
   taxes for public or governmental purposes, but are special
   taxes assessed against the property of the district to pay for
   the construction of the highways in the vicinity of the prop-
   erty so assessed, which in legal contemplation adds to the
   value of the property as much or more than the amount of the
   assessments imposed.

2. ———: ———: **Notice: Due Process of Law: By Suit on
   Tax Bill.** The Benefit Road Law (Art. 7, chap. 102, R. S. 1909)
   does not authorize the taking of the property of a landowner
   in the district without due process of law. It makes no provi-
   sion for the property owner to be heard during the proceed-
   ing imposing the special benefits, but it does make them col-
   257 Mo. 38

lectible by suit, when all the legal defenses the property owner may have, from the inception of the proceedings down to the rendition of judgment on the tax bills, may be pleaded and asserted in the same manner that any legal or equitable defense may be made in any other action at law or in equity; and that constitutes notice, a right to a hearing, and due process of law.

3. ———: Zones for Benefit Assessments: Legislative Act. The fact that the Benefit Road Law divides the district into zones, and provides that the lands in the first zone within one mile of the road to be improved shall be assessed according to their value, and those within the second-mile zone according to seventy-five per cent of their value, and those within the third-mile zone according to fifty per cent of their value, the value to be fixed by the board of commissioners without notice to the landowners or a hearing, is not a taking of their lands without notice or due process of law. The authority to create the benefit district and to determine the percentage of the benefits to be assessed, rests with the Legislature, which may delegate it to certain officers and corporate bodies, and so long as they act within their legislative authority their acts cannot be questioned because of lack of notice. Such acts are legislative assessments.

4. ———: Assessment of Benefits According to Value Exclusive of Improvements: Class-Legislation. The provision of the Benefit Road Law authorizing the real estate of the district to be assessed with benefits for the public improvement, according to the value of the land, exclusive of improvements, is not invalid as unauthorized class-legislation. There is no constitutional provision prohibiting legislation which embraces all persons and things that naturally belong to the same class and are similarly situated and upon whom it must operate uniformly and equally.

5. ———: Benefit Assessments: Maximum Indebtedness. Assessments authorized by the Benefit Road Law for the construction of permanent highways within the district are special benefits to the lands against which they are made, and do not constitute an indebtedness within the meaning of the constitutional provision fixing a maximum indebtedness which a municipal corporation cannot exceed.

6. ———: ———: ———: Bonds or Tax Bills. And whether the road improvement is to be paid for by one assessment in the form of a tax bill to be delivered to the contractor, or bonds are issued in an amount equal to the estimated cost plus ten per cent and when sold the money is used to construct the highway and thereafter special tax bills are issued against the lands and the money collected through them used in paying

the bondholders, the indebtedness is not that of the district, but a charge against the lands for the benefit conferred, and hence said constitutional inhibition against an indebtedness in excess of a maximum amount does not apply.

7. ————: ————: ————: ————: **Omission of Provision from Bonds.** The statute does not prescribe the form of the bonds to be issued by a benefit road district, and there is nothing in it which prohibits a recital of the purposes for which they are issued; and that purpose is clearly ascertainable from the whole statute, which makes it clear that no tax can be levied or collected except the special assessments to construct the road or to pay the bonds, and hence an omission of a recital in the bonds that the money derived from their sale is to be used for road construction, would not authorize a holding that the bonds are a debt of the district.

8. ————: **Public Corporation.** A benefit road district organized under article 7 of chapter 102, R. S. 1909, is a public corporation, and its commissioners are public officers.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Simrall & Simrall* and *Craven & Moore* for appellants.

(1) The judgment of the court in dismissing plaintiffs' petition and refusing an injunction was error because the proceeding under Chap. 102, art. 7, R. S. 1909, contemplates the taking of plaintiffs' property without due process of law in this: The value of plaintiffs' property was assessed to determine its proportion of benefits arbitrarily without either notice or hearing, contrary to sections 21 and 30, art. 2, Constitution of Missouri, and the Fourteenth Amendment of Constitution of United States. St. Louis v. Rankin, 96 Mo. 497; State ex rel. v. Baker, 170 Mo. 194; Kansas City v. Ward, 134 Mo. 180; Toudonn v. Denver, 210 U. S. 373; Spencer v. Merchant, 125 U. S. 345; Railroad v. Wright, 207 U. S. 127. (2) The judgment was wrong because benefits are assessed against plaintiffs' property

without legislative determination of the fact that such property is benefited contrary to sections 21 and 30, Constitution of Missouri, and Fourteenth Amendment to Constitution of United States. Const. Co. v. Shovel Co., 211 Mo. 531; Arggle v. Johnson, 118 Pac. 487; Falbrook Irrig. Dist. v. Bradley, 164 U. S. 170. (3) Article 7 of chapter 102 does not and cannot authorize the issue of the bonds exceeding five per cent of the assessed valuation of the taxable property in the district, and the present proceeding looked to the issue of such bonds, exceeding five per cent, contrary to Sec. 12, art. 10, Constitution of Missouri. The statute should not be construed to disregard the Constitution in this respect. Kansas City v. Ward, 134 Mo. 184. (4) The "bonds" mentioned on page 374, Laws 1911, are a debt of the district. (5) The injunction should have been granted because the statute, Chap. 102, art. 7, does not contemplate or authorize the improvement of city streets or the incorporation of cities or villages into these road districts as attempted in the present case. State ex rel. v. Gordon, 197 Mo. 55; Road Dist. v. Huber, 212 Mo. 551. (6) The Town of North Kansas City, and City of Birmingham could not forfeit their franchise and become disincorporated by mere non-use of their franchise even if the evidence were sufficient on this issue. Hambleton v. Dexter, 89 Mo. 188; State v. Huff, 105 Mo. App. 354; Ewing v. Hobblitzelle, 85 Mo. 77; Ringling v. Hampstead, 193 Fed. 590; Hill v. Anderson, 122 Ky. 87; Cain v. Brown, 111 Mich. 657. (7) Section 10616 does not authorize the use of proxies where voting on the question therein set out and the election was lost in the present case unless proxies were counted.

*Claude Hardwicke* for respondents.

(1) Section 10621 provides that at any election or general meeting of landowners of any district, any

owner of land may be represented by his agent or attorney, who may vote for such owner. Such being the case, we see no reason for plaintiffs' contention as to votes of landowners so represented. (2) Article 7, chapter 102, does not authorize the taking of property without due process of law. There is nothing in our Constitution prohibiting the creation of such corporations. Harris v. Bond Co., 244 Mo. 664. The statute imposes no limitation as to the class or kind of land that may be embraced in districts created thereunder, the only restriction or limitation being that each district must be wholly within one county and embrace as much as 2000 acres. Such being the case, there is no constitutional reason for a hearing before a district is created. If under the statute only such lands could be included as would be benefited by road improvements, there would be some reason for a hearing for the purpose of determining what lands would be so benefited. But the legislative act is a legislative finding that so long as each district is embraced wholly within one county and contains not less than 2000 acres, every tract of land therein will be benefited by the permanent improvement of any public road therein, and should be assessed for the improvement. The statute does not authorize the taking or seizure of property until there has been a judgment recovered in a suit on a tax bill and the landowner must have notice of such suit, and, in the absence of laches or estoppel, be allowed to make any defence thereto that has not been previously determined by due process of law. Page & Jones on Taxation by Assessment, secs. 119, 132, 773; Hagar v. Reclamation Dist., 111 U. S. 701; St. Louis v. Richison, 76 Mo. 470; Kansas City v. Huling, 87 Mo. 203; Bank v. Carswell, 126 Mo. 436; Springfield v. Weaver, 137 Mo. 650. (3) The statute under which such district was incorporated could be considered unconstitutional, even though it had provided that tax bills issued thereunder should be col-

lected by summary proceedings. It is provided, by
sections 10615 and 10616, that the tabulated statement
of valuations shall be filed with the president or sec-
retary and thereafter be open to inspection; and that
upon the filing thereof; and the report, maps and
profiles; a general meeting shall be called, and notice
thereof given. The giving of such notice is sufficient
notice to all landowners that such tabulated statement,
showing the valuations, has been prepared and is sub-
ject to their inspection; and if any lands have been
overvalued, the owners thereof are thereafter charged
with notice thereof; and they thereafter have, under
the law of this State, an opportunity for hearing,
and relief against an improper assessment, by suit in
equity which they can resort to at any time if not
stopped or barred by laches. Arnold v. Hawkins, 95
Mo. 569; McMillen v. Anderson, 95 U. S. 37; Page &
Jones on Taxation by Assessment, sec. 133. (4) The
statute is equivalent to a legislative finding that all
land in any road district created thereby will be
benefited by the permanent improvement of any road
therein; that the aggregate of such benefit will equal
the estimated cost of the improvement and adminis-
trative expense, etc.; that land within one mile of the
improvement will be benefited one-third more in pro-
portion to its value than lands over one mile from
and within two miles of the improvement, and twice
as much in proportion to its value as lands over two
miles from the improvement. It is the province of
the Legislature to ascertain and state the proportion
by which benefits will accrue to the lands in an asses-
ment district, or to designate a method whereby such
proportion may be arrived at. If the Legislature
had provided that the cost be assessed against all
lands in the district *ad valorem,* without regard to
location with reference to the improvement, as in
Board of Commissioners v. Harrel, 147 Ind. 500, and
Fallbrook Ir. Dist. v. Bradley, 164 U. S. 112; or that

it be assessed against all such lands in proportion to their area, the courts should not interfere, although either of such methods of apportionment would ordinarily vary much further from the proportion by which the benefits would actually accrue than the apportionment prescribed by the statute under which our district was created. Heman v. Allen, 156 Mo. 534; Meier v. St. Louis, 180 Mo. 391; Houck v. Little River Drainage Dist., 248 Mo. 373. (5) By their contention, that the bond issue authorized would constitute a debt, created in violation of our constitutional restriction of debt contracting power of public corporations, it is evident that plaintiffs overlook the fact that the only means provided by which such bonds could be paid is by collection of special assessments. The district will have no general taxing power; though some of the public revenue is to be used by it as a trust fund, for certain specified purposes only. Sec. 10624. It will never be possible under the law for anything to be paid or collected on said bonds, except as realized from special assessments. The purpose of such constitutional restriction is, to prevent municipalities from so encumbering themselves with indebtedness that they cannot, with the general taxes they are permitted to collect, carry on properly the governmental functions they are usually intrusted with; so there is no reason for applying such restriction to indebtedness payable only out of special assessments, or indebtedness of corporations having no general taxing power and no power or authority to pay indebtedness except out of the proceeds of special assessments. Bonds of the district would, we will admit be utterly void as general obligations of the district, but if provision is made for their payment out of special assessments, the holder thereof can, nevertheless, compel collection of such assessments by the district, and application of the proceeds toward payment of said bonds. Kansas City v. Ward, 134 Mo.

172; Morrison v. Morey, 146 Mo. 543; Stueb v. Cox, 111 Ind. 299; Board of Comm. v. Harrell, 147 Ind. 500; Hughes v. Parker, 148 Ind. 692; Railroad v. Jacksonville, 114 Ill. 502; Elec. & P. Co. v. Ft. Dodge, 115 Iowa, 568; Clinton v. Wallihu, 98 Iowa, 655; Galveston v. Loonie, 54 Tex. 517.

*Neville & Gorman* and *Barbour & McDavid, amici curiae,* also for respondents.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, *amici curiae.*

(1) The statute in question is not in contravention to Sec. 12, Art. 10, of the State Constitution in that it authorizes an issuance of bonds without the approval of two-thirds of the qualified voters of the road district, nor does it violate said section of the Constitution in that it authorizes the creation of an indebtedness in excess of five per cent of the assessed valuation of the property in the district. Levee Co. v. Hardin, 27 Mo. 496; Morrison v. Morey, 146 Mo. 543; Const. Co. v. Railroad, 205 Mo. 177; Rolph v. Fargo, 42 L. R. A. (N. S.) 649; Raleigh v. Peace, 17 L. R. A. (N. S.) 332; 1 Page & Jones on Tax. by Special Assessment, sec. 35; Farrar v. St. Louis, 80 Mo. 379; St Joseph v. Owen, 110 Mo. 445; Lamar v. Lamar, 128 Mo. 188; Clinton v. Henry Co., 115 Mo. 557; Dear v. Mississippi Co., 107 Mo. 464; Kansas City v. Bacon, 147 Mo. 259; Live Stock Co. v. Miller, 170 Mo. 240; Houck v. Drainage Dist., 248 Mo. 383. (2) Section 3 of article 10 of the State Constitution does not apply to taxation by special assessment. Farrar v. St. Louis, 80 Mo. 379; Meier v. St. Louis, 180 Mo. 391; Corrigan v. Kansas City, 211 Mo. 608; Arnold v. Knoxville, 3 L. R. A. (N. S.) (Tenn.) 837; 2 Elliott on Roads, sec. 686.

WOODSON, J.—The plaintiffs instituted this suit in the circuit court of Clay county, against the defendants, to enjoin them from issuing $77,000 of bonds, the proceeds of which were to be used in the construction of public highways in the Kansas City-Liberty Boulevard Road District, of Clay county, Missouri.

A trial was had which resulted in a judgment in favor of the defendants, and a dismissal of the bill. After taking the proper preliminary steps therefor, the plaintiffs appealed the cause to this court.

The facts of the case are practically undisputed, and are as follows:

The Kansas City-Liberty Boulevard Road District of Clay county is a special road district, organized and incorporated under article 7 of chapter 102, Revised Statutes 1909, and the amendments thereto.

There is no pretense but what the district was duly incorporated under the provisions of said article, but the contention is that the article is unconstitutional, null and void under both the State and Federal constitutions.

In order to intelligently understand the legal propositions here presented, it is necessary to briefly notice the provisions of said article 7.

The first section thereof, being 10611, Revised Statutes 1909, provides that the county courts of the various counties of the State may divide them into road districts, and authorizes said courts to incorporate with the usual powers of corporations for public purposes, and each to be known as "—— road district of —— county." Each district is to embrace not less than two thousand acres of contiguous lands, and may be commensurate with a township, but must be located wholly within the county in which it is organized.

Section 10612 provides that when a petition signed by the owners of a majority of the acres of land within any district proposed to be organized, stating the name

of the proposed district, giving the boundaries thereof, and the number of acres embraced, and stating the names of the owners of the land, and the number of acres owned by each, and praying for an organization of such public road district in accordance with the provisions of said article and filed in the office of the clerk of the county court thirty days before the first day of the next term thereof, the clerk shall give notice that the petition will be heard at the next term of the court, etc., which notice shall state the names of at least three of the petitioners and the boundaries of the proposed district, and notify all owners of the land in said district who may desire to oppose the formation thereof to appear on the first day of said term and file their written remonstrance thereto, etc., which shall specifically state their objections to said organization. That the court shall hear said remonstrance, and may make such changes in the boundaries of such district as the public good may require. That if after such changes have been made it appears to the court that the petition so filed still contains the names of the owners of a majority of the acres contained in the district, the court shall make a preliminary order establishing the district, 'and set out the boundaries thereof. If no remonstrance shall have been filed, the court shall determine whether the petition for the organization has been signed by the owners of a majority of the acres embraced within the proposed district, and if so, shall establish the district with the boundaries given in the petition, or with the boundaries as may be set forth in the amended petition signed by the owners of a majority of the acres affected thereby; and said amended petition may be filed at any time before the preliminary order establishing the district is made, but the boundaries of the district shall not be changed so as to embrace any lands not described in the notice given

by the clerk, unless the owner shall in writing consent thereto, etc.

Section 10613 provides that after the district has been formed the county court shall appoint three commissioners, possessing certain qualifications, to hold their office until the first Tuesday after the first Monday in January thereafter; "and on said date the landowners in said district . . . shall elect three commissioners, one of whom shall serve for one year, one for two years and one for three years, and on the first Tuesday after the first Monday in January each year thereafter," they shall elect one commissioner for a period of three years, etc. Then follows provisions for filling vacancies on the commission, etc.

Section 10614 provides for the qualification of the commissioners, organization of the board, the election of officers, and the times and places for holding meetings, etc. The county treasurer is made treasurer of the road district, etc. The president of the board of commissioners shall preside at all meetings, sign warrants and have general supervision over the work of the commission, etc., and the secretary shall keep a record of all the proceedings of the board, draw warrants, etc.

Section 10615 provides that the board of commissioners shall fix a fair and impartial value on each tract of land within the district independent of the buildings thereon, and make a tabulated statement of such valuations, according to numbers, and the names of the owners if known, etc., and note what tracts lie within one mile of the road proposed to be improved, those that are a greater distance than one and under two miles, and those over two miles, and when more than one road is proposed to be improved a separate statement as to each shall be made. The statements of valuations shall be signed by the commissioners and acknowledged, etc. Thereupon the board shall request the county surveyor to draw estimates of the

costs of the road to be improved, etc., who, under the direction of the board, shall make estimates of the various costs of the improvements, etc., and make a report to the board accompanied by maps and profiles, specifying the road or roads to be improved, and the various kinds of work and materials to be used, etc., and the proportionate cost to be charged to each separate tract of land for each separate road, and for the whole, according to the valuations previously made, if all are to be paid for at once, and the amount if to be paid in five or twenty years' equal installments, and the amount of each installment. That each tract of land within one mile of the road to be improved shall be charged in proportion to the valuation fixed thereon as previously directed, and each tract located at a greater distance than one mile and less than two miles from such road shall be assessed at seventy-five per cent of the value thereof, as previously fixed, and all the tracts more than two miles therefrom shall be charged with fifty per cent of said valuation; and in determining the share of any tax-bill or bonds to be taxed against each and all tracts of land in the road district, the rule of apportionment above stated shall govern the county clerk in extending the taxes on the tax-books kept by him for that purpose.

Section 10616 provides that upon filing said tabulated statement of the valuations, and said report, maps and profiles, the board of commissioners shall call a general meeting of all the landowners in the district, etc., and give twenty days' notice thereof. At such meeting the board shall submit the report containing the estimates, together with the maps and profiles, made by the engineer, to the landowners for examination, and shall take a vote of those present on the following propositions:

"First—Shall the roads mentioned in said report be constructed or improved according to any of the plans and out of any of the materials therein set out,

and the costs thereof to be charged against the lands in the district?

"Second—What materials shall be used in constructing said road or roads?

"Third—Shall the cost be paid (1) at once, or (2) distributed through five years, or (3) distributed through twenty years?"

Then follows a provision as to the number of votes each landowner has, and the number necessary to carry each proposition submitted.

Section 10617 provides that if the landowners vote, as previously stated, in favor of the improvements and to charge the cost thereof against the lands, as previously stated, then the commission shall make out and sign and acknowledge, etc., a report of the action of the landowners at said meeting, and file the same with the clerk of the county court, and said clerk shall enter the same upon the records of said court, and from the filing of said report said public road district, by the name mentioned in the preliminary order of the court, shall be a political subdivision of the State, for governmental purposes, with all the powers mentioned in said article 7. That if the owners of a majority of the acres of the land in the district do not vote for the construction of the improvements mentioned, then the board of commissioners shall report that fact to the county court, and the court shall make an order rescinding its former preliminary order establishing the district, and order that all the costs thereof be paid out of the general road funds of the county.

Section 10618 provides that after any such road district has been established the board of commissioners shall employ a competent engineer to draw plans and specifications for the construction of the roads and the materials to be used, etc., according to the vote of the landowners, as in section 10616 directed. That after said specifications have been approved by

the board of commissioners they shall be filed with said commission, and thereupon said commission shall in the name of said district enter into a written contract with the lowest and best bidder, to construct the roads, etc.

Section 10619 provides that if, at the general meeting of the landowners, previously mentioned, they should vote for the payment of the entire cost, by one assessment, the contract should provide for the payment of said work or improvements by special tax bills issued against the lands in the district, in the proportions previously mentioned, and that upon the completion of the work, and the acceptance of the same, etc., the board of commissioners shall make out and certify to the county clerk a statement of the contract price of the entire improvements, a description of each tract of land embraced in the district lying within one mile of the road, and of each that is situated more than one and less than two miles therefrom, and of each tract which is located at a greater distance than two miles, accompanied with a statement of the number of acres in each tract, and the name of each record-owner thereof, and the valuation fixed thereon by the commission, which shall be acknowledged, etc. That thereupon the clerk of the county court shall apportion to each tract its share of the cost of said improvements and make out separate special tax bills against each tract for the amount apportioned to it as provided for by section 10615, which shall be payable to the contractor within sixty days from issue, etc. That said bills shall be signed by the president of the board and attested by the county clerk, delivered to the contractor and accepted by him in full payment for his work, etc. That said tax bills shall be a lien upon the respective tracts of land against which they are issued, and if not paid when due, the owner may sue thereon in the circuit court at any time within two years thereafter, etc.

That before issuing said tax bills the county clerk shall enter in a book to be denominated "Special Tax Record of —— Road District," a description of the tax bills by number, amount, payee, date of issue and maturity, and the numbers of the land and the names of the owners, if known, etc. Said record book shall be kept in the office of the county clerk, and a duplicate thereof shall be made by him and deposited with the county treasurer, and he shall give to the owner of each tract if known, or if not known, to the occupant, a notice of the amount due on said bill and when due.

Then follows a minute provision as to how the tax bills shall be paid, and the release and cancellation of the same.

Section 10620 provides that when the landowners at the general meeting authorized by section 10616 shall, by vote, direct that the cost of said improvements shall be made payable in annual installments extending over five or twenty years, as the case might be, the board of commissioners shall issue the bonds of the district for the length of time by said meeting directed, and in an amount not to exceed the estimates submitted to said meeting, plus ten per cent thereof, and·enter into a contract for the construction of said road as directed by sections 10618 and 10619, of this article, except the contract for the improvements shall provide that the cost thereof shall be paid for in money instead of special tax bills. Provided, however, the board of commissioners may use said bonds or any part thereof at par in the payment of said work. That said bonds shall run in the name of the road district, bearing six per cent interest, payable at the expiration of the time indicated by the landowners at said general meeting, etc. Said bonds shall be signed by the president of the road district and attested by the county clerk, who shall before their delivery register them in a suitable book procured for that·purpose. That whenever the board of commissioners shall

sell any of said bonds for the payment of any work to be performed under this article, the proceeds thereof shall be paid to the county treasurer, who shall enter the same to the credit of said district, etc., and shall pay the same out on the warrants drawn by the board of commissioners. That the board of commissioners shall make out and certify to the county clerk a statement of the amount of the bond issue, and a description by numbers of each tract of land in the district lying within one mile of the road, and of each that lies a greater distance than one mile and less than two miles, and of each tract that lies a greater distance than two miles therefrom, with a statement of the number of acres contained in each tract, and the valuation placed thereon by them, and acknowledge the same as is provided for acknowledging deeds to real estate, and file the same with the clerk of the county court.

Thereupon said clerk shall apportion to each and all of said tracts, according to the rule prescribed by said section 10615, its share of said bond issue, etc., and enter the same in a book to be denominated ''Bond Tax Record of —— Road Dictrict,'' and shall append thereto his certificate as county clerk, and from said date such apportionment shall be a charge against the tracts of land indicated, until paid.

The county clerk shall in each succeeding year make out a duplicate of so much of said bond record as will indicate the portion of said charge each tract is to pay for that year, etc., and deposit said duplicate record with the collector of revenues of the county, etc., and said collector shall annually make out separate tax bills against each tract for the amount shown by the duplicate record, and collect the same as other taxes are collected, and receipt for them in the same manner. Each tax bill shall contain the name of the owner of each tract, and if not paid on presentation shall bear interest, etc., and if not paid within

six months, suit may be brought thereon by the collector to the use of the owner thereof, etc. That a judgment in any such suit shall be a lien on the lands described in the tax bills, and sued on, etc. The collector shall deposit all moneys by him collected on said tax bills with the county treasurer, etc.

Then follows a provision fixing the liability of the collector for the collection of said tax bills, the fees he shall receive for his services, the receipts he is to give in satisfaction of the same when paid, and the release of the tax against the lands, etc.

Section 10621 provides as to how titles to certain lands must be considered, which is not important in this case.

Section 10623 authorizes the board of commissioners to employ county surveyor and bridge commissioner to perform certain work.

Section 10624 provides that the county clerk shall set aside to the credit of the road district the portion of the revenues for working the public roads that may be raised by direct taxation against the property lying therein, according to any existing laws or subsequent enactment, and said revenue shall be spent by said board of commissioners for keeping any road within the district in repair. Also a proper apportionment of any license taxes and poll taxes and city revenue raised and set aside to any special road district organized under this article, is to be made by the county court and turned over to said board of commissioners. That any road overseer who shall be such under any law at the time of the organization of such road district shall turn over to the board of commissioners any tools, graders, scrapers or implements of any kind in his possession which may by a proper apportionment belong to such district.

Then follows a provision authorizing the board of commissioners to make contracts for the improve-

257 Mo. 39

ment of the roads of the district from time to time, and paying for the same out of the funds coming into its hands.

And section 10625 provides that all poll taxes of the district shall be paid in cash and placed to the credit of the district.

I. Counsel for appellants first insist that the judgment of the circuit court was erroneous because the taxes levied against their property, under and by virtue of chapter 102, article 7, Revised Statutes 1909, are illegal, for the reason that said article authorized said levy without notice to them, and therefore authorizes the taking of their property in violation of sections 21 and 30 of article 2 of the Constitution of this State, and section 1 of the Fourteenth Amendment of the Constitution of the United States.

<span style="float:left">Benefit Road Districts.</span>

These constitutional provisions, in substance, provide (1) that private property shall not be taken for public use without just compensation, and (2) that no person shall be deprived of his property without due process of law.

There is absolutely no merit in either of these contentions.

Regarding the first: This court from its earliest history down to this time, has uniformly held that special taxes or benefits, such as were levied against appellants' property, under said article 7, are not public taxes within the meaning of the Constitution authorizing the levy and collection of taxes for public or governmental purposes, but are special taxes assessed against the property for the payment of the improvements made upon the highways in the vicinity of the property, which in legal contemplation adds to the value of the property as much or more than the amount of the taxes imposed.

It would serve no good purpose to cite authorities in support of this ruling, save the case of Ranney v. City of Cape Girardeau, 255 Mo. 514, wherein many of the cases so holding are cited by Judge LAMM.

Attending the second: This contention is also untenable for the reason that this court and the Supreme Court of the United States have repeatedly held that where these special benefits are levied, and no provision is made for the property-owners to be heard during the proceedings imposing the special benefits, and where they are only collectible by suit, as in the case at bar, then all legal defenses the property-owners may have, from the inception of the proceedings down to the rendition of the judgment of the court on the tax bills, may be pleaded and contested in the same manner that any legal or equitable defense may be made in any other action at law or in equity.

The only procedure prescribed by said article 7 for the collection of these benefits is section 10620, previously mentioned, which only authorizes their collection by suit in the circuit court.

In treating this question, Page and Jones on Taxation by Assessment, section 119, uses this language: "The general rule is that at some time before the assessment becomes an absolute finality there must be a notice to the property-owner and an opportunity for a hearing as to those questions of fact which concern the amount of the assessment to be imposed upon such property, except such as the legislative power has authority to determine without special inquiry, and has in fact so determined . . . If such notice is not given and under the law the assessment becomes a finality, subject to be enforced summarily, without giving any opportunity for a hearing as to the questions of fact which concern the amount of the assessment other than those which the legislative power has authority to determine without special inquiry, and

which the legislative power has in fact so determined, such assessment then constitutes a taking without due process of law and is invalid as in violation of the constitutional provisions under consideration."

In section 132, the same authority says: "If the assessment is to be enforced summarily without notice or judicial proceedings, it is evident that no opportunity is thereby given to the property-owner to contest the assessment on its merits . . . If notice has not been given at a prior stage of the proceedings so that the property-owner has an opportunity to contest the assessment upon its merits, the proceeding is in violation of the constitutional provision which forbids the taking of property without due process of law." [Pash v. City of St. Joseph, *ante,* p. 332.]

In section 773, the same authority says: "If the assessment can be enforced only by an action at law or a suit in equity, and in such proceeding the property-owner is given a full opportunity to be heard upon the question of benefits, the property-owner is not entitled, as of constitutional right in the absence of statutory provision therefor, to any notice, except that of the institution of such proceedings to enforce the assessment."

In Hagar v. Reclamation Dist., 111 U. S. 701, it is held that: "A law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the Fourteenth Amendment of the Constitution, which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it, either before that amount is determined or in a subsequent proceeding for its collection."

The same ruling has been announced by this court in the following cases: City of St. Louis v. Richeson, 76 Mo. 470; Kansas City v. Huling, 87 Mo. 203; Sax-

ton National Bank v. Carswell, 126 Mo. 436; Spring-field to use v. Weaver, 137 Mo. 650, 1. c. 672.

The case of City of St. Louis v. Ranken, 96 Mo. 497, is not in conflict with the principles of law announced in the foregoing cases. In that case the question was, had the provisions of an ordinance of the city authorizing the improvements to be made, and the assessment of benefits therefor, been complied with? Said ordinance provided that notice should be given of the establishment of the benefit district, the time and place of making the assessments, and giving the property-owners the right to be then heard upon those propositions. This ordinance was wholly ignored and this court held, and properly so, that the assessments were void because those provisions of the ordinance had not been complied with. While it is true, in that case the charter and ordinances of the city provided, as do those of most of the cities of the State, that if any property-owner shall consider himself aggrieved by the award of the commission chosen to assess the damages and benefits, he may file in the circuit court exceptions to the report of the commissioners, which shall be heard by said court, etc. In that class of cases the lawmaking power has deemed it proper to give the property-owners two hearings, one before the commissioners and another in the circuit court. But there is no such provision as there stated provided for in the statutes under consideration in this case.

I am, therefore, clearly of the opinion that there is no merit in either of those contentions of counsel for appellants.

II. If I correctly understand counsel for appellants, they lodge an additional objection against the validity of section 10615, of article 7, chapter 102, Revised Statutes 1909, which is closely related to or germane to the

**Legislative Assessments.**

questions presented and disposed of in paragraph one of this opinion.

In substance, it is contended that said section divides the road district into three benefit zones of one mile each, and further provides that the lands in the first shall be assessed according to their values, say 100 per cent, the second at 75 per cent, and the third at 50 per cent of the values which are to be fixed by the board of commissioners, without notice to the property-owners.

This contention can be more logically considered by dividing it into two elements and considering each separately.

First—It is contended that because said section 10615, of the statute, arbitrarily divides the road district into three beneficial zones, and assesses the lands in each at a different percentage, without giving the property-owners in each notice thereof, and an opportunity to be heard thereon, it is violative of said section 30 of article 2 of the Missouri Constitution and therefore deprives them of their property without due process of law.

In answer to that contention it is sufficient to state that said division of the road district into zones and the fixing of the percentage of benefits to the lands in each are legislative acts which cannot be questioned upon the ground of want of notice to the property-owners.

The reason for this rule is, that the authority to create benefit districts and the percentage of the benefits to be assessed rests solely with the Legislature, which, however, may delegate that authority to certain officers and institutions of the State, such as the common councils of the various cities of the State and the county courts of the various counties thereof, and so long as they act within their legislative authority their acts cannot be questioned because of want of notice in the absence of some charter, ordinance or

statutory provision to the contrary. Such acts are known as legislative enactments or legislative assessments, as the case may be.

This has been so often decided by this court and the Supreme Court of the United States, that it is no longer open for discussion. The case of Naylor v. Harrisonville, 207 Mo. 341, l. c. 353, reviews some of the cases deciding this question by both this court and the Supreme Court of the United States. There is therefore no merit in this contention.

The second objection before mentioned, namely, that while it may be conceded that the division of the districts into zones and the fixing of the percentage of benefits to the lands in each zone, may be legislative acts, yet, the valuation of the lands by the board of commissioners in each and all of the zones, upon which the percentage of benefits is to be based, was not made or fixed by the Legislature, but by said board, and is therefore subject to question by the property-owners in each and all of them, and if not afforded that right then the proceedings would result in taking their property without due process of law.

It must be conceded that if appellants' major premise is true, then the sequence must necessarily follow. But is the major premise true? I think not, for the reason, as before stated, namely, that each and all property-owners within the district, who considered himself or themselves aggrieved by the valuation of his or their lands by the board of commissioners, are offered an opportunity for a full hearing upon that question in the circuit court when suit is brought upon the tax bill, which cannot be collected in any other manner.

This proposition was fully considered and decided in clause two of paragraph one of this opinion, and there is nothing additional, that I know of, that could with profit be added to what is there stated.

I am, therefore, of the opinion that there is no merit in this contention.

III. It is next insisted by counsel for appellants that said section 10615 of article 7 is unconstitutional, null and void, because, as stated, it is class-legislation, in that it authorizes the taxation of the real estate of the district according to its reasonable value, exclusive of the buildings thereon. In other words, it is contended that the taxation of the lands and not the buildings thereon, is an unreasonable and unjust classification, and therefore, the statute authorizing that to be done is class-legislation, within the meaning of the State and Federal constitutions.

*Benefit Assessment: Exclusive of Improvements.*

There is no constitutional provision prohibiting legislation which embraces all persons and things that naturally belong to the same class and are similarly situated and upon whom it must operate uniformly and equally. [State ex inf. v. Standard Oil Co., 218 Mo. 1, and cases cited.]

The case of Corrigan v. Kansas City, 211 Mo. 608, in the majority opinion, goes to the extent of holding that property of the same class, if belonging to different classes of owners, may be exempt from the payment of these special benefits.

I did not then, nor do I now, subscribe to that doctrine, for the reasons stated in the dissenting opinion at page 633; but independent of that error, as I see it, that case properly recognizes the authority of the Legislature to make reasonable and natural classifications of property for the purpose of assessment, to pay for local improvements. In fact, that rule of taxation is recognized and enforced by practically all, if not all, of our cities, towns and villages in paying for street and other improvements and the cost of constructing sewers, etc., as is shown by the scores of cases which have reached this court. More-

over, it would be difficult to conceive of a more natural classification of real estate than that of soil, buildings, trees, etc. This classification runs all through. the laws of states and nations; and without it, legislation regarding questions of rents, landlord and tenant, fire insurance, arson, mechanic's liens, railroads, telegraph and telephone linés, and all classes of local improvements, such as streets, alleys, sewers and public parks in cities, and drainage and levee districts in the country, would have to rest upon totally different foundations than it now does; and to abolish that classification, at this late date, would disturb the whole fabric of our jurisprudence and would inject therein endless confusion and complications.

Even though we should consider orchards, vineyards, and other such betterments added to the soil by the hand of man, as improvements, yet there is a clear distinction between that class of improvements and those known as houses, buildings, etc.

The former becomes not a fixture to the land, but a part of the soil itself, as it were. They owe their life to, and draw their substance, growth and development therefrom, aided by the air, rain and sunshine —without which they would die, perish and return to dust; but not so, as to the latter—they owe no debt to the earth, except for the footstool upon which they stand.

I am, therefore, clearly of the opinion that there is no merit in this insistence.

IV. Counsel for appellants also insist that said

**Excessive Indebtedness: Benefit Road District.** article 7 is unconstitutional, null and void because it authorizes the road district to create a bonded indebtedness in excess of the constitutional limitation.

The constitutional provision referred to is section 12 of article 10; and in so far as it is material to this question, reads as follows:

"No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness."

The assessments authorized by said article 7 of the statute are for the payment of local improvements, denominated special benefits to the land against which the assessments are made; and for that reason this court has uniformly held that such assessments do not constitute an indebtedness within the meaning of the constitutional provision just quoted. [Ranney v. Cape Girardeau, supra.] In fact, I do not understand counsel to contend that they do; but be that true or not, the uniform ruling of this court has been that no such assessment constitutes an indebtedness within the meaning of that provision, but are special assessments made to pay for the special benefits accruing to the property by reason of the local and special improvements—the one offsetting the other.

I also understand from the briefs and arguments of counsel for appellants, that they practically concede that if under said sections 10619 and 10620, the property-owners of the district had voted in favor of paying the entire cost of the improvements by one assessment, then a special tax bill would have been issued against each tract of land in the district, which would have constituted a special lien thereon, and would not have constituted an indebtedness of any kind

against the road district as such, in any sense; but be that as it may, there is no language contained in the said article which remotely indicates that such assessments would be an indebtedness against the district. But upon the contrary, the whole import and meaning of the article is to the contrary.

But the real contention of counsel for appellants is, that since the landowners did not vote in favor of paying the entire cost of the improvements by one assessment, but by installments, as provided for by said section 10619, then it became the duty of the district to *issue its bonds* for the amount of the estimated cost of the improvements, plus 10 per cent, and that they be sold in the manner prescribed, and that the proceeds thereof be used in the construction of the roads ordered, etc.

From that premise it is insisted and argued with much force and earnestness, that since the bonds are the bonds of the district, the indebtedness which they represent must also be that of the district, and consequently they must be paid by it.

If that contention is true, then clearly the district would, by said section 12 of the Constitution, be prohibited from issuing the bonds in question, for the reason that their face value would far exceed the constitutional limitation contained therein.

If that is the meaning to be placed upon the statute, then I do not understand counsel for respondent to differ from counsel for the opposition as to what would be the legal effect of the Constitution upon the statute and upon the bonds proposed to be issued under that authority.

Under that assumption counsel for both parties would be compelled to admit that the statute would be unconstitutional and the bonds would be void. But the record in the case fails to disclose that counsel for respondents are so generously inclined as to admit that counsel for appellants have correctly interpreted

said statute; consequently they persist in their conten-tion that the statute is constitutional and that the bonds if issued, would be valid.

The basis of this contention is the same as that, which is practically conceded, as previously stated, if the vote of the landowners had been in favor of paying the entire cost of the improvements by one assessment, then the tax bills would have been a special lien against the respective tracts of land, and not an indebtedness of the road district, as such.

If I correctly read and understand the meaning of sections 10619 and 10620, there is no difference in principle between the character of the indebtedness created for the payment of the special benefits con-ferred by the improvements or by what hand the same is to be paid, whether it is payable by one assessment and evidenced by a single tax bill issued against each tract of land, and delivered to the contractor, or whether the indebtedness is to be paid for by annual installments evidenced by several tax bills issued against each tract, and collected by the county col-lector, and the proceeds thereof turned over to the county treasurer for the purpose of paying the bonds as they mature, instead of the tax bill, had they been based upon one assessment, and had been delivered to the contractor in the first instance, as previously stated.

The indebtedness voted by the landowners, whether payable by a single assessment or several, constitutes liens upon the respective tracts of land in the district, in proportion to their respective values, and must be paid severally by each landowner, whether paid in bulk or in annual installments. If in bulk, the payments would have been made payable to the con-tractor, because in such case the tax bill would have been made payable to and delivered to him, but if in installments, then they would have been payable to the county collector, and by him turned over to the

county treasurer, and by him paid to the bond-holders, whoever they might be.

This is not controverted by counsel for appellants, but they insist that there is no provision contained in said article 7 of the statutes which authorizes the issuance of such bonds, containing a clause showing that they are only payable out of the special benefits collected, and, therefore, they must be considered and treated as the bonds of the district and not simply evidences of an indebtedness, only payable, as previously stated, out of the proceeds of special tax bills issued for benefits imposed against the several tracts of land in the district, and collected in the manner therein provided for.

This contention is unsound for two reasons: first, because the statute does not undertake to prescribe the form of the bonds to be issued, and the presumption is that the officers charged with their execution will issue bonds in harmony with the provisions of the statutes authorizing their issuance and the purpose for which they are executed and the means of their payment.

If those mandates of the statutes are complied with, the bonds upon their face, as well as the statutes authorizing their execution, which must be read into the face of the bonds, will conclusively show that they are not the bonds of the road district, but simply evidences of an indebtedness payable out of the proceeds of the special tax bills issued against the lands embraced in the district, for the benefits mentioned.

And the second reason mentioned for saying that said bonds are not the obligations of the road district is this: That in considering the nature and character of the bonds in question it is the duty of the court and all parties dealing with them, to read and consider in connection therewith the entire article of the statute bearing thereon and authorizing their execution; and by so doing it will clearly appear that no authority is

given to any officer of the county or road district to levy or collect any tax with which to pay said bonds, except the special assessments authorized for the improvements mentioned, which are for the benefit of the respective landowners, and not for the benefit of the district itself. Moreover, the district as such, has no means out of which it could pay said bonds, nor any authority to make assessments therefor, except in the manner previously stated, which conclusively shows that the indebtedness is against the lands and not against the road district.

The principle underlying these observations was presented to this court in the case of State ex rel. v. Gordon, 223 Mo. 1. There one of the questions presented was regarding the form of the bonds to be issued. The bonds were issued under the statutes authorizing the issuance and sale of bonds for the purpose of building school houses and furnishing them. One of the points made was that the bonds issued should have shown upon their face (which they did not do) that they were issued for the purpose of building school houses and for furnishing the same. This court in a very carefully considered opinion, written by Judge LAMM, held that the bonds issued were valid, notwithstanding the omission from the face thereof the purposes for which they were issued. Judge GRAVES dissented from the entire opinion for several reasons, one of which was, that the recital mentioned did not appear on the face of the bond, impliedly holding that the recital should have been made. Counsel for neither party nor did any member of the court contend or hold that such a recital in the bonds would have been improper, but, with the exception of Judge GRAVES, were of the opinion that the bonds were not invalid because of such omission—believing that the statutes should be read into the face of the bonds, which would be as effectual as if the recital had been actually written in the face of the bonds.

I am, therefore, of the opinion that this contention is without merit, and it is ruled against appellants.

V. It is also insisted by counsel for appellants that said article 7 is unconstitutional, for the reason stated, "that it turns over the care and maintenance of the public highways to a body of landowners and also confides to them the expenditure of public moneys."

This is clearly a misconception of the statute. Section 10617, in clear and unambiguous language, declares that after the meeting of the landowners, and their votes are cast in favor of the propositions contained in the previous section, the district "shall be a political subdivision of the State for governmental purposes with all the powers mentioned in this article and such others as may from time to time be given it by law." The board of commissioners are in the first instance appointed by the county court, and thereafter elected by the landowners of the district.

Under these statutes all such road districts are public corporations, organized under the unquestioned authority of the Legislature. [Harris v. Bond Co., 244 Mo. 664.]

And as was held in that case, the commissioners appointed or elected in the manner provided for by section 10613 are public officers for the purposes mentioned in said article 7.

Moreover, all of our drainage districts are organized and administered by a board of commissioners in pursuance to statutes practically similar to these under consideration. This being true, there remains no foundation whatever for this insistence to rest upon; and it is accordingly ruled against the appellants.

Entertaining these views of the case I am perfectly satisfied that the statutes in question are valid, and that no error was committed by the circuit court in the trial of the cause.

The judgment is affirmed. *Graves, Bond* and *Walker, JJ.,* concur; *Lamm, C. J., dubitante; Brown, J.,* dissents; *Faris, J.,* not sitting.