STATE OF MISSOURI at the Relation of WEBSTER GROVES SANITARY SEWER DISTRICT, Relator, v. FORREST SMITH, State Auditor.— 87 S. W. (2d) 147.

Court en Banc, October 7, 1935.

856

*Alva C. Trueblood, B. H. Charles* and *Carl Trauernicht* for relator.

858

*Roy McKittrick,* Attorney General, *Covell R. Hewitt,* Assistant Attorney General, and *John L. Graves* for respondent.

COLLET, J.—This is a mandamus action to compel the State Auditor to register certain bonds issued by the Webster Groves Sanitary Sewer District. Upon the filing of the application for the writ in this court, respondent waived the issuance of the writ, agreed that relator's application and petition might be considered as such writ and filed his return thereto. The return challenges the constitutionality of an Act of the Fifty-seventh General Assembly of Missouri entitled:

"An Act to provide for the establishment of sewer districts in

counties now having or which may hereafter have a population of not less than one hundred fifty thousand nor more than four hundred thousand inhabitants, defining the powers and methods of government of such districts, providing for the appointment of engineers, attorneys and employees of such districts and their powers and duties, providing for the making of maps and profiles of such districts and holding of elections for the purpose of incurring indebtedness, the qualifications, powers, duties and manner of election of trustees of such districts, providing for the assessment, levy and collection of taxes for the design, maintenance and operation of sewers in such districts, authorizing the issuance of bonds, providing for the terms of such bonds and the manner of execution, sale and payment thereof, providing for the building, construction and maintenance of sewers in such districts and the method of contracting and paying thereof, the condemnation of lands for the purpose of such districts with an emergency clause.'' [Laws 1933-4, Ex. Sess., p. 119.]

Relator filed a motion for judgment on the pleadings. Relator's statement of the facts is clear and concise. Respondent adopts that statement. We will do likewise. Omitting formal parts it is as follows:

''Proceeding under this act a petition of more than one hundred (100) tax-paying citizens of St. Louis County residing within an area lying partly within and partly outside of the city of Webster Groves, and praying that this area be incorporated into a sewer district, was filed in the office of the Clerk of the Circuit Court of said St. Louis County. Thereupon, and pursuant to the act, the court appointed a competent sanitary engineer to lay out and define the boundaries of the proposed district and to report to the court as required by the act. Thereafter, said engineer duly qualified and in due time filed his report, including therein an estimate of eight hundred thousand dollars ($800,000) as the probable cost of the proposed improvements, but stating that the cost to the district might be greatly reduced below said estimate by a grant of funds from the Federal Emergency Administration of Public Works. Thereupon, after due notice as required by the act, and after hearings in open court on the petition and on certain objections thereto, the court did, on the 29th day of March, 1935, enter a decree wherein it was found that the court had jurisdiction, that the construction of a system of sanitary sewers for the contiguous area defined in said engineer's report was necessary for the preservation of the public health or public welfare or public utility or benefit and was advisable; and wherein the court also found in favor of the petitioners and in favor of making the improvements of the type and kind described in said petition, and that the estimated cost thereof, as reported by said engineer, was eight hundred thousand dollars ($800,000).

And thereupon, said court, by its said decree, did incorporate the said district with the boundaries set out in said report, under the name of the Webster Groves Sanitary Sewer District, as a body corporate and political subdivision of the State of Missouri, with the corporate life of fifty years, and ordered the election commissioners of said county to call an election of the voters within the area defined in said decree, and as provided in said act, for the purpose of electing three (3) trustees of said district, and for the further purpose of voting upon a proposition to incur an indebtedness of said district in a sum not exceeding the amount of said estimate, for the purpose of constructing a system of sanitary trunk line sewers for said area.

"Thereafter, certified copies of said decree were filed in the office of the recorder of deeds of said county, in the office of the Secretary of State of Missouri, and with the election commissioners of said county, and thereupon, the said election commissioner did call an election as required by law and by said decree, and did appoint proper judges and clerks therefor, naming the polling places, and did give due and sufficient notice of said election in the manner required by the act. That, pursuant to said notice, an election was duly and regularly held on May 14, 1935, within the boundaries of said district, and thereafter the said Board of Election Commissioners did certify that at said election William J. Moore, Ward Goodloe and Wayne H. Brown had been duly elected trustees of said district for the respective terms of six, four and two years, and that the proposition to incur an indebtedness of said district, in an amount not to exceed eight hundred thousand dollars ($800,000) had received more than two-thirds of the votes cast at said election upon said proposition, namely two thousand four hundred and eighty-five (2485) votes for the incurring of said indebtedness and three hundred and thirty-six (336) against the incurring thereof.

"Thereafter, said Moore, Goodloe and Brown did qualify, as required by law, and organized the Board of Trustees for said district by electing said Moore as president thereof, said Goodloe as treasurer, and said Brown as secretary.

"Thereafter, on July 3, 1935, said Board of Trustees did duly adopt an order and resolution directing the issuance of eight hundred thousand dollars ($800,000) of bonds authorized at said election (said amount being within the constitutional and statutory debt limit of five per cent), and did, by said resolution request the county court of said county to levy annually an *ad valorem* tax upon all the taxable property of said district sufficient to pay the interest on and provide a sinking fund for the retirement of said bonds; and further by another resolution, and by the certificate of its secretary, did inform the said county court that as it was not intended to sell all of said bonds immediately, there would be required for the year 1936 only the sum of twenty thousand dollars ($20,000) to

pay the interest upon such bonds as might be sold and to maintain the district's corporation with its necessary expenses, and did by said resolution request said county court to levy a tax sufficient to produce such sum for the year 1936. And thereupon, said county court did levy an *ad valorem* tax, pursuant to such request, sufficient to produce such sum during the year 1936 and did cause such rate to be extended upon the tax books against all taxable property in said district.

"Thereupon, said Board of Trustees did submit to the respondent herein, executed bond No. 1, authorized to be issued by said resolution and order, together with a transcript of the court proceedings relating to the organization and creation of the said sewer district, and the orders and resolutions of said Board of Trustees directing the issuance of said bonds, said bond No. 1 being submitted to the respondent for the purpose of having the same registered by him as required by said act, and at the same time said trustees did tender the fee and compensation allowed said auditor by law; but the respondent refused and still refused to register said bond No. 1.

"The application for the alternative writ then avers that relator is without remedy in the premises, except and save by writ of *mandamus,* and prays the court to issue its writ requiring and commanding the respondent to register the said bond or to show good and sufficient cause why he should not do so.

"The respondent, waiving the issuance of the alternative writ of *mandamus* and pleading to the application for the alternative writ in lieu thereof, first admits the facts alleged in the application for the writ and then alleges, as reasons why the peremptory writ should not issue, that

"1. The relator has no legal existence because the act of the 57th General Assembly, Extra Session, approved January 13, 1934 (Laws 1933-34, Ex. Sess., p. 119), is unconstitutional because certain subjects covered by the act are not embraced within its title as required by Section 28 of Article IV of the Constitution; that the act contains more than one subject; that the subject of the act is not clearly expressed in the title; that the provision in the act for the levy of a tax to cover estimated expenses of maintaining the district corporation is not embraced in the title; that Sections 21 to 28 inclusive, of the act (providing for sub-districts for lateral sewers, the issuance of sewer revenue bonds, on a simple majority vote, to construct laterals, such bonds payable from rental charges for use of laterals, etc.) constitute a subject different from the general subject of the act not referred to in the title, and also attempted to authorize debt contrary to the limitation contained in Section 12 of Article X of the Constitution; also, that the act is unconstitutional in that it attempts to provide for the creation of a new class of municipal corporation contrary to Section 7 of Article IX of the Constitution;

that said act diminishes the corporate powers of cities, towns or villages, any part or the whole of which may lie within a sewer district; also, that the act violates paragraphs (2), (11), (12) and (15) of Section 53 of Article IV of the Constitution, which forbids the enactment of special or local laws; that the act also violates Article XIV of the Amendments to the Constitution of the United States and Section 30 of Article II of the Constitution of Missouri, in that interested parties objecting to the organization of a proposed district are limited to a hearing on two propositions only, (a) that the proposed improvement is not necessary to the preservation of the public health and public welfare, and (b) that it would not be of public utility or benefit; also, that the act is unconstitutional in that it authorizes the expenditure of county funds in aid of districts created under the act in violation of Section 46 or Article IV of the Constitution; also, that it violates Articles III and IV in that it attempts to delegate judicial functions to the engineer; also, that the act violates the Constitution because the construction and maintenance of sewers is a proper function of municipalities, and the General Assembly has no power to deprive cities, towns or villages of their jurisdiction and control thereof; also, that the act is unconstitutional as attempting to permit the incurring of indebtedness for sewer purposes up to 5% of taxable values, without requiring the deduction of indebtedness incurred by a municipality located in whole or in part within the district. In other words, that it permits a duplication of overlapping debt which might aggregate more than 5%, contrary to Section 12 of Article X of the Constitution.

"2. That the relator has no legal corporate existence because the circuit court of St. Louis County was without jurisdiction to incorporate it because the act provides for the incorporation of a contiguous area for the purpose of establishing a 'system of sewers,' whereas, the engineer's plan for sewers provides for two separate and distinct trunk line sewers serving two water sheds, both connected however, with a common outlet, being a large outfall sewer located in the city of St. Louis, provision being made in the engineer's estimate of cost for the payment to the city of St. Louis for the use of such common connecting outlet, and said trunk line sewers together serving a populous and contiguous area.

"3. That the bond presented to the respondent for registration was not lawfully authorized to be issued because in the submission of the proposition for the authorization of the bond issue, the amount of the proposed bonds was not definitely stated; the proposal being for 'an amount not greater than eight hundred thousand dollars ($800,000);' and because the voters of the district were, therefore, not advised concerning the exact amount of indebtedness proposed to be incurred.

"To these defenses the relator pleads by way of a motion for judgment notwithstanding the respondent's return."

The act authorizes the organization of comparatively large areas into sewer districts in counties having a population of not less than 150,000 nor more than 400,000. A district must embrace contiguous territory which may be wholly within, wholly without or partially within and partially without the corporate boundaries of municipalities. A comprehensive system of "main line" sewers for an entire sewer district is provided for. The expense of the construction of the main line system is to be met by the issuance of bonds. Taxes are to be levied on all property within the district to pay the principal and interest on the bonds and the cost of maintenance of the system. After the "main line" system is laid out and adopted the district is to be divided into convenient subdistricts not larger than 1000 acres in extent. The cost of laterals and mains within the subdistricts other than the main line sewers are to be financed by the issuance of revenue bonds the principal and interest of which is to be paid by rentals received from persons owning property within the subdistrict abutting on the lateral sewers. The act is comprehensive. A great many of its provisions need not be stated here. Such as are necessary to a determination of the issues and which do not appear in the statement quoted, will be referred to in connection with the various points involved.

The questions presented by respondent will be taken up in the order in which they appear in the return. Those relating to the sufficiency of the title of the act will be considered as one point. Briefly stated they are: First, that Sections 21 to 28 inclusive, providing for the creation of subdistricts, the adoption of plans and specifications for the construction of lateral and branch sewers within the subdistricts, the voting of bonds to finance the construction of subdistrict sewers and the provision for the levy of a tax to defray the expense of maintaining the district corporation, are not embraced within the title and are not so related to the subject matter of the title that the title can be said to properly refer to them. Also, that several subjects are included in the act which are not related to each other. Second,—that the subject of the act is not clearly expressed in the title. If either proposition is correct then the act violates Section 28 of Article IV of the Constitution which is as follows:

"Sec. 28. Bills must contain but one subject—exceptions—title. No bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated, and except bills passed under the third subdivision of section forty-four of this article) shall contain more than one subject, which shall be clearly expressed in its title."

The rule to be applied in determining whether the subject matter

of an act is embraced in the title and whether the act contains more than one subject has been frequently stated by this court. One of the leading cases is State ex rel. v. Miller, 100 Mo. 439, l. c. 444, 13 S. W. 677, where it was said:

"Its demands (Sec. 28, ante) are that matters which are incongruous, disconnected and without any natural relation to each other must not be joined in one bill; and the title must be a fair index of the subject-matter of the bill. A very strict and literal interpretation would lead to many separate acts relating to the same general subject, and thus produce an evil quite as great as the mischief intended to be remedied; hence a liberal interpretation and application must be allowed."

With that rule as a guide, we see no infirmity in the title of the act on those grounds.

Is the subject matter of the act clearly expressed in the title? We think it is. The entire act relates to but one general subject, namely, the construction of sewers. Many details are contained in the act such as the establishment of sewer districts and subdistricts, the making of plans and specifications, the holding of elections to vote on the issuance of bonds, providing for the levy of taxes to defray the expense of maintaining the corporation and paying the principal and interest on bonds, the condemnation of land, and the election and qualification of trustees to administer the affairs of the districts. All relate to the one subject. That subject is fully and fairly indexed in the title. As stated in State v. Ward, 328 Mo. 658, l. c. 665, 40 S. W. (2d) 1074, l. c. 1076: "The title need not refer literally to all details suggested by the general subject."

It is next contended that Sections 21 to 28 inclusive are unconstitutional because authority is there given subdistricts to incur an indebtedness beyond annual income on a majority vote and in excess of five per cent of the value of the taxable property therein, contrary to Section 12 of Article X of the Constitution.

It is provided in Section 25 of the act that "only those otherwise qualified voters in said subdistrict who own real estate therein, which real estate . . . will directly abut the lateral sewers contemplated . . . shall be entitled to vote" on the question of the issuance of subdistrict bonds. Section 26 provides that an annual rental charge shall be collected "from the owners of real estate abutting said lateral sewers" sufficient to pay the interest and sinking fund on said subdistrict bonds plus the estimated cost of maintenance of the lateral sewers. It is therefore apparent that these subdistrict bonds are to be issued against special assessments to be collected from the owners of real estate which directly abuts the lateral sewers. No general obligation is imposed upon all property owners within the district or subdistrict to pay these bonds or any part thereof.

In the case of State ex inf. Atty. Gen. v. Curtis, 319 Mo. 316, 4 S. W. (2d) 467, we held that bonds issued in benefit districts against special assessments are not indebtedness within the meaning of Section 12, Article X.

In the case of Embree v. Road District, 257 Mo. 593, l. c. 618, 166 S. W. 282, when passing upon the right of a special road district to issue bonds in excess of the above-stated constitutional limitation we said: "The assessments authorized by said Article VII of the statute are for the payment of local improvements, denominated special benefits to the land against which the assessments are made; and for that reason this court has uniformly held that such assessments do not constitute an indebtedness within the meaning of the constitutional provision just quoted." In that case it was argued, as it might have been here, that it was the duty of the road district (subdistrict in this case) to *issue its bonds* and that therefore the indebtedness which the bonds represent must be that of the district and consequently paid by it. It was conceded that if the bonds represented the obligation of the road district the constitutional limit of indebtedness by the district had been exceeded. We held then that those bonds were not the obligation of the district and were valid. For the same reason the bonds of the subdistricts *may* be valid. They will not be valid unless they are only payable out of the rental charges provided for in the act and are not general obligations of the subdistrict. [Embree v. Road District, supra, l. c. 621.] It will be borne in mind that the bond which has been presented to respondent for registration is not a subdistrict bond. Relator calls attention to the fact that a subdistrict bond may not be issued. Since the constitutionality of that part of the act relating to subdistrict bonds was raised we decide it now rather than await the probable presentation of the question later.

We do not think that the act is unconstitutional because, as asserted by respondents, it attempts to provide for the creation of a new class of municipal corporations contrary to Section 7 of Article IX of the Constitution. Nor does it diminish the corporate powers of a city, town or village which may be embraced within the sewer district. Both of these questions were discussed at length in State ex inf. Attorney General v. Curtis, 319 Mo. l. c. 327, 4 S. W. (2d) 467, and decided contrary to respondent's contention.

Respondent contends that the act violates subdivisions two (2), eleven (11), twelve (12) and fifteen of Section 53, Article IV of the Constitution which are as follows:

"The General Assembly shall not pass any local or special law:

"(2) Regulating the affairs of counties, cities, townships, wards or school districts: . . .

"(11) Incorporating cities, towns or villages, or changing their charters:

"(12) For the opening and conducting of elections, or fixing or changing the places of voting: . . .

"(15) Creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts:"

In Thomas v. Buchanan County, 330 Mo. 627, l. c. 637, 51 S. W. (2d) 95, we said:

"The next point made by certain of the respondents is that the law is local and special in violation of subdivisions 2, 15 and 32 of Section 53, Article IV of the Constitution, in that it singles out Buchanan County and attempts to regulate its affairs, creates a special board of estimate, and makes the county court a purchasing agent. It is true the only county in the State which, at this time, has a population between 95,000 and 150,000 is Buchanan County. But this does not make the law local, because the act applies as well to all counties which may hereafter have that population. In other words, the class is fixed, but the counties that fall within it may change as their population flunctuates. That such legislation is not local is established by numerous decisions of this court: Davis v. Jasper County, 318 Mo. 248, 253, 300 S. W. 493, 495; State ex rel. Moseley v. Lee, 319 Mo. 976, 993, 5 S. W. (2d) 83, 90."

The act before us does not define the powers or territorial limits of cities nor determine the conduct of city elections in any manner, therefore subdivision eleven (11) and twelve (12) of Section 53, supra, are not involved. This point must be ruled against respondent.

A further objection to the act is that Section 4 thereof limits the nature of the objection of an interested party to two propositions, namely: that "the proposed improvement is not necessary for the preservation of the public health or public welfare or will not be of public utility or benefit." It is contended that this limitation of the scope of the authorized objections results in depriving interested parties of their property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and Section 30 of Article II of the Constitution of Missouri.

Section 4 of the act provides for objections to the *original petition for incorporation*. These objections relate to the proceedings leading up to the original incorporation of the district. They do not involve the issuance of bonds or the levy of taxes but contemplate only the determination of the general question of the propriety of the formation of the district.

In a recent case involving the same question we said:

"As we have noted, defendants' objections to the constitutionality of the present drainage act goes only to the provisions relating to the formation and incorporation of the drainage district. Yet it is the settled law that the mere formation and incorporation of a

drainage district, with power to tax for certain purposes, and the inclusion of defendants' land therein, does not of itself and without more deprive such landowner of his property, much less does so without due process of law. The formation of such corporation merely creates a legal entity with power to tax. It is the exercise of this power which constitutes the taking of property and violates the due process of law clause, if at all.'' [Garden of Eden Drain. Dist. v. Bartlett Trust Co., 330 Mo. 554, l. c. 565, 50 S. W. (2d) 627.]

Under the act before us the issuance or nonissuance of bonds and the levy of taxes is to be determined later at an election at which a two-thirds vote is required to authorize the issuance of district bonds. The act further provides that no taxes shall be levied or collected for the payment of any indebtedness incurred by the district unless and until the voters authorize the issuance of the district bonds. This assignment is therefore overruled.

It is next contended that the act is unconstitutional because it authorizes the expenditure of county funds in aid of sewer districts in violation of Section 46 of Article IV of the Constitution of Missouri.

Section 5 of the act provides that after the incorporation of a sewer district by the circuit court it shall be the duty of the circuit court to order the county court or the election commissioners, if there be election commissioners in the county, to call and hold an election within sixty days after the issuance of the order for the purpose of electing a board of trustees and voting on a proposition to incur indebtedness by the district for the construction of district sewers. Section 7b provides that the expense of elections held prior to the issuance of bonds and the levy of taxes by the district shall be paid out of the general revenues of the county. This section also provides that all indebtedness incurred by the district prior to the issuance of bonds may be paid out of funds received from the sale of bonds. It is the payment of these election expenses by the county which furnishes the grounds for this objection to the act. Relator contends that Section 7b clearly contemplates the repayment of the election expenses to the county out of the proceeds of the sale of bonds and that since in the case at bar the election resulted in an authorization to issue the bonds, the question is a moot one. We will not so consider it. Situations may arise where the election was unfavorable to the issuance of bonds in which event there could be no repayment.

No authority is cited by respondent in support of his position. Relator cites the case of State ex rel. Lynn v. The Board of Education, 141 Mo. 45, 41 S. W. 924, in support of this provision of the act. In that case the same objection was made to an act of the Legislature requiring the city of St. Louis to pay the expense of a school election held within the city. We sustained the validity

of the statute. Again in the recent case of State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 1. c. 963, 42 S. W. (2d) 196, we held that a statute authorizing the State Highway Commission to build state highways through municipalities with state funds was not a gift or grant to such municipalities within the meaning of Section 46 of Article IV. We see no difference in principle between those cases and the situation before us. The payment of the election expense of the newly created sewer district was not a gift or grant to that district within the meaning of Section 46 of Article IV of the Constitution.

Respondent contends that the act violates Articles III and IV of the Constitution in that it delegates judicial functions to the engineer of the sewer district.

Section 2 provides for the appointment of a sanitary engineer by the circuit court, requires that the engineer make all necessary investigations, surveys and maps to determine the feasibility of the plan proposed by the petitioners and further that "if the engineer finds the proposed sewer system would be for the preservation of the public health or public welfare or will be of public utility or benefit he shall so report. . . ." The engineer must report his finding in writing to the circuit court together with such maps, profiles, drawings and other data as are necessary to advise the court in the premises. Although the briefs do not disclose what particular part of the act the objection is made to, we assume the objection is directed to that part quoted above. The mere report by the engineer of his conclusion coupled with the facts upon which he bases that conclusion is not an improper exercise of a judicial function by an administrative officer. [State ex rel. v. Taylor, 224 Mo. 393, 1. c. 475, 123 S. W. 892.]

Respondent's next attack on the constitutionality of the act is stated as follows:

"That the aforesaid act is further unconstitutional and void in that said act attempts to permit the incurring of indebtedness for sewer purposes to an amount not exceeding five per cent (5%) of the assessed valuation of taxable property within the district (as ascertained by the next before the last completed assessment) without requiring the deduction of indebtedness incurred by a municipality or municipalities located in whole or in part within such district. The act, in effect, attempts to authorize the incurring of an indebtedness for sewer purposes up to five per cent (5%) of the assessed valuation of taxable property within the district, despite the fact that a municipality or municipalities included within the district may already have outstanding bonded indebtedness which, when added to the indebtedness incurred by such district, would result in an aggregate debt amounting to more than five per cent (5%) of the assessed valuation of taxable property in that part of such

district as may be overlapped by a municipality or municipalities, and thereby said act violates Section 12 of Article X of the Constitution of Missouri.''

Respondent cites no authority in support of this proposition. Relator briefs the point and cites 6 McQuillin, Municipal Corporations (2 Ed.), section 2372 (2214); Stamford v. Stamford, 107 Conn. 596, 141 Atl. 891, and 44 Corpus Juris, page 1190, section 4161, in support of the validity of the act. All of those authorities hold that in computing the existing bonded indebtedness of a municipality for the purpose of determining whether it equals or exceeds the constitutional limit it is proper to exclude obligations of another political subdivision whose territory is co-extensive in whole or in part with the municipality. Our own research discloses that the principle involved has been decided by this court in the case of State ex rel. School District No. 1 v. Hackmann, 277 Mo. 56, 209 S. W. 92. In that case a consolidated school district was formed which included parts of several common school districts. The common school districts had bonds outstanding amounting to $4500. The consolidated district voted bonds for $5000 to erect a school building. The consolidated district's bond issue was assailed upon the ground that it exceeded the constitutional limit. The assessed value of the property within the consolidated district justified the issuance of $5000 in bonds but did not authorize the issuance of $9500. It was contended that the bonds of the common school districts should be considered as obligations of the consolidated district in determining the amount of bonds the latter district might issue. We held that since under the facts in that case there was no obligation on the part of the consolidated district to pay the common school district bonds, the amount of those bonds should be excluded in computing the indebtedness of the consolidated district. That rule applies here. Respondent does not contend that a sewer district authorized by this act is actually obligated in its corporate capacity to pay any obligation of a municipality which might lie within or partially within the boundaries of the sewer district. Absent such responsibility the debts of the municipality should not be considered the debts of the sewer district within the meaning of Section 12 of Article X of the Constitution.

Respondent asserts in his return that the circuit court was without jurisdiction to incorporate the Webster Groves Sanitary Sewer District because, quoting from the return, ''the aforesaid act provides for the incorporation of a contiguous area for the purpose of establishing a 'system of sewers' for such area, whereas Relator's plan for the construction of sewers, as disclosed by the report of the engineer, provides for two separate and distinct trunk line sewers serving two water sheds, both connected, however, with a common outlet, being a large outfall sewer located in the City of St. Louis, and

together serving a populous and contiguous area." No mention is made of this point in respondent's brief. We will not burden this opinion with a discussion of an abandoned point.

■ Finally, respondent asserts that the bonds presented to him for registration were not lawfully authorized because in the submission of the proposition for the authorization of the bond issue, the amount of the proposed bonds was not definitely stated.

The ballot used was as follows:

"To authorize Webster Groves Sanitary Sewer District of St. Louis County, Missouri, to incur an indebtedness of said District, of an amount not greater than Eight Hundred Thousand Dollars ($800,-000) for the purpose of constructing a system of sanitary trunk line sewers for said District, and to evidence such indebtedness by the issuance of bonds in said amount for said purposes.

"Yes

"For Incurring Indebtedness

"No

"Instructions to Voters:

"To cast a ballot in favor of the proposition submitted upon this ballot place a cross (X) mark in the square opposite the word 'Yes'; to vote against the proposition submitted upon this ballot place a cross (X) mark in the square opposite the word 'No'."

The statute providing for the election is, in part, as follows:

"In the order of such election the Court shall also provide for submitting at such election a proposition to incur indebtedness by the District *in an amount not greater than* the estimate of the cost of constructing a system of sewers as provided in the report of the engineer." [Laws 1933-34, Ex. Sess., sec. 5, p. 123.]

Respondent argues that the use of the words "an amount not greater than $800,000" leaves to the board of trustees the opportunity to build a sewer system much less extensive than could be built with $800,000, which might not meet the needs of the district and be unacceptable to the voters. We are not impressed with the force of this argument. The statute requires that the engineer's report should describe the boundaries of the district and the plan of the sewer system to be constructed; that the engineer's report be filed with the court; that objections to the report might be made, in which event hearings should be held on the objections. Thereafter the court was required to formally approve or disapprove the plan. It is then and not until then that the statute provides for the bond election. In providing for the calling of the election the statute carefully provides that the election shall be called for the purpose of "submitting at such election a proposition to incur indebtedness by the District in an amount not greater than the estimate of the cost of constructing a system of sewers *as provided in the report of the engineer.*" The record discloses that all of these statuory re-

quirements were carefully followed. The ballot, above set out, definitely stated that the election was being held to determine whether an indebtedness should be incurred "for the purpose of constructing a system of sanitary trunk line sewers for said District." The system described in the engineer's report was the only system of sewers the district had or could have had in prospect. It would be an unreasonable presumption to assume that any voter did not understand that he or she was voting for or against an indebtedness *to construct the proposed sewer system.* The amount of indebtedness to be incurred was therefore limited to the maximum amount of $800,000 (the engineer's estimate) and a minimum equal to the best contact price which could be obtained for the construction of *the improvement specified in the engineer's report* and was stated with sufficient definiteness in the submission to the voters.

For the reasons stated, our peremptory writ of mandamus should issue. It is so ordered. All concur.