STATE OF MISSOURI at the relation of WEBSTER GROVES SANITARY SEWER DISTRICT, Relator, v. FORREST SMITH, State Auditor.— 115 S. W. (2d) 816.

Court en Banc, April 21, 1938.

*Alva C. Trueblood, Carl Trauernicht* and *Seward McKittrick* for relator.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

TIPTON, J.—This is an original proceeding in mandamus to compel Forrest Smith, State Auditor of Missouri, to register a bond issued by Subdistrict No. 17 of the Webster Groves Sanitary Sewer District. Upon filing of the application for the writ, respondent waived the issuance of the writ, agreed that relator's application and petition might be considered as such writ, and filed his return thereto. The return challenges the constitutionality of Sections 22 to 28, inclusive, of the act of the Legislature approved January 13, 1934 (Laws, Ex. Sess. 1933-1934, pp. 119-136), the interpretation made by relator of these sections, and the procedure in the election held for the authorization of these bonds. Relator filed a motion for judgment on the pleadings.

As respondent has adopted relator's statement, we will do likewise, without quotation marks.

This case arises on the refusal of the respondent to register a bond authorized to be issued for the purpose of providing funds to construct lateral sewers in an unsewered area designated as Subdistrict No. 17 of the said Webster Groves Sanitary Sewer District.

The application of the relator for an alternative writ of mandamus against the respondent avers, among other things, the following:

That proceeding under the provisions of Section 22 of the said act, the Webster Groves Sanitary Sewer District subdivided the whole district into convenient subdistricts, not larger than one thousand acres in extent, prescribed boundaries thereof within which sewers necessary to complete the drainage should be constructed at the expenses of the subdistricts. It obtained the consent, through an ordinance duly adopted by the city of Webster Groves, for the inclusion in the said subdistricts of all that portion of the lands in said subdistricts as lay within the corporate limits of the city of

Webster Groves (the boundaries of the Webster Groves Sanitary Sewer District and of the city of Webster Groves are substantially the same). One of the subdistricts so bounded was designated as Subdistrict No. 17 and is the area under consideration in this action.

The application of the relator for an alternative writ further avers that having so bounded said subdistrict and having found and declared by resolution duly adopted that the subdistricts, including said Subdistrict No. 17, were convenient subdistricts, not larger than one thousand acres in extent, within which sewers and drains were necessary to complete the drainage, said district did, pursuant to said Section 22 of the said act, publish the plans for the subdivision into subdistricts, as provided by law, in the Webster News-Times, a newspaper of general circulation in the said Webster Groves Sanitary Sewer District.

The application of the relator for an alternative writ further avers that there was filed with the said Webster Groves Sanitary Sewer District a petition signed by resident property owners within the said Subdistrict No. 17, petitioning the Board of Trustees of the said Webster Groves Sanitary Sewer District to provide for the construction of a complete system of lateral sewers in said Subdistrict No. 17 and issue bonds of the district in anticipation of the revenues of the said Subdistrict No. 17, as provided by Section 23 of said act; that the Board of Trustees of the said Webster Groves Sanitary Sewer District, pursuant to the powers given it by the said section 23 of said act, determined and found the petition to be sufficient as provided by the said section of said act and found that one hundred twelve (112) out of a total of one hundred fifty-five (155) resident owners of lots or parcels of land in said subdistrict had signed said petition, whereupon said Board of Trustees, by resolution duly adopted, declared said Subdistrict No. 17 to be duly formed as provided by said section of said act and caused to be prepared by the chief engineer of the said district a report showing detailed plans and specifications for and the estimated cost of a complete system of lateral sewers in said Subdistrict No. 17 and that such plans, specifications and estimates of costs were duly prepared and reported by the said chief engineer and were duly adopted by resolution by the said board of trustees of the said district; that said board of trustees did then, by resolution duly adopted, direct that an election be called and held in said Subdistrict No 17, at which the following proposal should be submitted:

"Shall the Board of Trustees of the Webster Groves Sanitary Sewer District have authority to issue bonds for the purpose of anticipating the revenues of Sub-district No. 17 of the Webster Groves Sanitary Sewer District for the cost of constructing a system of lateral sewers in said Sub-district No. 17 as provided for in the re-

port of the Chief Engineer of the Webster Groves Sanitary Sewer District, which reports was filed with the Board of Trustees of the Webster Groves Sanitary Sewer District on the 8th day of September, 1937, and remains on file in the records of the said Board of Trustees, the total amount of said bonds to be the amount of Fifty-three Thousand Dollars ($53,000), being the amount of the estimated cost of the said system of lateral sewers as shown in the said report of the Chief Engineer of the Webster Groves Sanitary Sewer District."

The said resolution further directed that at said election only those otherwise qualified voters in said subdistrict, who own real estate therein, which real estate, as shown by the report of the chief engineer, will directly abut the lateral sewers contemplated in said report, should be entitled to vote.

The application of the relator for an alternative writ further avers that after due notice and in all respects as provided by law, as fully set out and alleged in the relator's petition, this election was held on the 26th day of October, 1937, under the direction of the Board of Election Commissioners for St. Louis County, Missouri, and that the said Board of Election Commissioners did, on the 27th day of October, 1937, certify that the proposition hereinabove set out had, at the said election, received seventy-seven (77) affirmative votes and one (1) negative vote; that thereafter, the said Board of trustees, by resolution duly adopted, directed the issuance of serial bonds of the said Webster Groves Sanitary Sewer District in the aggregate sum of fifty-three thousand dollars ($53,000) (the amount of the estimate of cost of lateral sewers contained in the report of the chief engineer of the district), and that by said resolution and in the form of the bond therein prescribed, the said board of trustees declared, among other things, that principal and interest on said bonds are payable "only out of funds which are to be received by the said Webster Groves Sanitary Sewer District, as rental charges in the nature of special assessments to be imposed and to be collected by the said Webster Groves Sanitary Sewer District from the owners of real estate abutting upon the lateral sewers in Subdistrict No. 17 of the Webster Groves Sanitary Sewer District, as the said sub-district was defined and bounded and declared to be formed by resolution of the Board of Trustees of the said Webster Groves Sanitary Sewer District on the 29th day of April, 1937, which rental charges in the nature of special assessments, will be a lien against the said real estate."

The application of the relator for an alternative writ further avers that by the said resolution the said board of trustees provided for the payment of principal and interest on said bonds in the following language:

"Be It Further Resolved, That in order to make provision for

the payment of interest on said bonds as it accrues and to provide for the payment of the principal thereof at maturity and for the purpose of raising funds for the maintenance and repairs of lateral sewers within said Sub-district No. 17 of the Webster Groves Sanitary Sewer District, the Board of Trustees of the Webster Groves Sanitary Sewer District shall and will annually, by resolution, impose an annual rental charge in the nature of a special assessment upon and against the real estate abutting said lateral sewers in said Sub-district No. 17, and shall collect the same from the owners of said real estate as hereinafter provided; said annual rental charge in the nature of a special assessment shall annually be directly apportioned according to the assessed valuation of each tract and parcel of said real estate in accordance with the then current record of the assessed valuation of said real estate as determined by the records in the office of the Assessor of St. Louis County, Missouri, and such charge in the nature of a special assessment shall, in each year, be in such amount as shall not exceed the estimated amount necessary to produce the amount necessary to pay the interest on said bonds as it accrues and to provide for the payment of the principal thereof at maturity, plus the estimated cost of maintenance and repairs of the said lateral sewers, and said rental charges in the nature of a special assessment shall constitute a lien upon said tracts or parcels of land until paid, and shall be collected by the Collector of the Revenue within and for St. Louis County, Missouri, at the time, in the manner, and by the same means as county, school and other taxes are collected and remitted. The Board of Trustees of the Webster Groves Sanitary Sewer District shall annually find and determine the tracts or parcels of land which directly abut the lateral sewers in said sub-district, and shall declare such finding by resolution and shall annually cause to be prepared from the current records in the Office of the Assessor of St. Louis County, Missouri, a list of all tracts or parcels of land within the boundaries of said Sub-district No. 17 as found and declared to directly abut the lateral sewers in said sub-district, and the assessed valuation of each such tract or parcel, together with a computation of the amount of rental charges in the nature of special assessments to be charged against each of said parcels or tracts of land in accordance with the rate fixed by the said Board of Trustees for said year, and shall certify and transmit a copy thereof on or before the— day of ———, 1938, and on or before said date in each year thereafter, to the Collector of the Revenue within and for St. Louis County, Missouri, together with a certified copy of such resolution.

''Be It Further Resolved, That the amounts of said rental charges imposed to pay the interest on said bonds and to provide for the payment of the principal thereof at maturity shall annually be estimated by this Board of Trustees at not less than a sum sufficient for

said purpose, and that said rental charges in the nature of special assessments shall at all times be fixed by the said Board of Trustees in such amounts as will produce, after making due allowance for delinquencies and the costs of collection, in each year, not less than the amount of the principal of and the interest on said bonds maturing and accruing during the following year, together with any and all sums provided for the purpose of maintaining and operating said sewer system.''

The application of the relator for an alternative writ further avers that the president and secretary of the said board of trustees prepared and executed Bond No. 1 of the said authorized issue of fifty-three thousand dollars ($53,000) and presented the same to the respondent, together with a complete transcript of the applicable proceedings for registration as provided by law, but that the respondent has refused and still refuses to register the said bond.

The application of the relator for an alternative writ then avers that the relator is without remedy in the premises except and save by writ of mandamus and prays the court to issue its writ requiring and commanding the respondent to register the said bond or to show good and sufficient cause why he should not do so.

The respondent, waiving the issuance of the alternative writ of mandamus and pleading to the application for the alternative writ in lieu thereof, first admits the facts alleged in the application for the writ and then alleges as reasons why the peremptory writ should not issue that—

I.    Sections 22 to 28 of the Act approved January 13, 1934, under which the bond sought to be registered is purportedly authorized, are unconstitutional and void, in that they unjustly discriminate against nonresident owners of real estate in Subdistrict No. 17 by limiting the right to vote at the election to those owners of real estate abutting the proposed lateral sewers who are otherwise qualified voters of the said district.

II.    Section 22 to 28 of the said act are unconstitutional and void in that they attempt to authorize the incurring of an indebtedness of the district secured by and to be paid from the proceeds of  a rental charge which respondent alleges to be an *ad valorem* tax and that said sections thereby attempt to authorize the district to become indebted without the assent of two-thirds of the voters, contrary to the provision of Article X, Section 12 of the Constitution of Missouri.

III.    Sections 22 to 28 of the said act are unconstitutional in that they attempt to impose a rental charge on each tract and parcel of real estate abutting the proposed lateral sewers, regardless of whether or not said lateral sewers will be or can be made use of in con-

nection with said real estate at the time the said rental charges are imposed or collected and that thereby the owners of such properties are deprived of their property without due process of law and are denied the equal protection of the law, contrary to the Fourteenth Amendment of the United States Constitution and of Section 30 of Article II of the Constitution of Missouri.

IV. The proceedings had in the issuance of the bond sought to be registered attempt to provide funds for the payment thereof by the imposition of a charge which is in truth and fact an *ad valorem* tax on real estate, thereby creating an indebtedness of the district without the assent of two-thirds of the voters thereof, contrary to the provisions of Article X, Section 12 of the Constitution of Missouri.

V. The proceedings had in the issuance of the bond sought to be registered and the terms of the bond unlawfully and without authority of law attempt to obligate the district to impose and collect annually a special assessment upon the real estate abutting said lateral sewers, although Sections 22 to 28 of the said act authorize the imposition and collection only of an annual rental charge upon the owners of said real estate, which is a personal charge against said owners and is not a charge, assessment or tax against the real estate.

VI. The proceedings had looking to the issuance of the bond sought to be registered and the terms of said bond unlawfully and without authority of law attempt to impose upon the real estate abutting the proposed lateral sewers a charge in the nature of a special assessment, which shall constitute a lien until paid, although Sections 22 to 28 of said act do not authorize the creation of any lien on the said real estate.

VII. The proceedings had in the issuance of the bond sought to be registered without authority of law attempt to levy a charge against the tracts or parcels of property according to the assessed valuation thereof, which constitutes in effect a charge against the improvements as well as the land, whereas the act approved January 13, 1934, permits the levy only against the tracts or parcels of property.

VIII. The election in said subdistrict by which the bond offered for registration purported to be authorized was not conducted in accordance with the provisions of law, in that the judges of election determined the qualifications of voters by requiring of them an affidavit as to their ownership of land, without warrant of law therefor.

IX.   The proceedings had looking to the issuance of the bond sought to be registered unlawfully and without authority of law attempt to impose upon the Collector of the Revenue for St. Louis County, Missouri, the duty of collecting the charges imposed for the payment of said bond, whereas the act provides that said charges shall be collected by the board of trustees of the sewer district and does not require the said collector to collect or receive the same until such charges shall have become delinquent.

X.   The proceedings on behalf of the district looking to the issuance of the bond sought to be registered and the terms of the bond unlawfully and without authority of law provide and covenant that the amount of the rental charges to be imposed and collected shall be fixed by the board of trustees of the district in such amounts as will produce in addition to the estimated cost of maintenance and after making due allowance for deliquencies and the cost of collection in each year, not less than the amount of the principal of and the interest on said bond maturing and accruing the following year, although Section 26 of the said act provides that the total amount of annual rental charges to be imposed shall not exceed the estimated amount necessary to be received to pay the interest and sinking fund on said bond, plus the estimated cost of maintenance, as fixed by resolution of the board of trustees.

XI.   All the proceedings had by the district looking to the issuance of the bond sought to be registered are unwarranted by law and do not authorize the district to borrow money and issue bonds on behalf of Subdistrict No. 17 upon the terms and conditions as set forth in the bond and the resolution purporting to authorize its issuance and that the agreements and covenants contained in the bond and in said resolution are unauthorized.

The first point in respondent's brief is that "rental charge" imposed by Section 26 of the act is in fact an *ad valorem* tax, and, therefore, is an attempt to authorize the district to become indebted without the assent of two-thirds of the voters, contrary to provisions of Article X, Section 12, of the Constitution of Missouri.

In the case of State ex rel. Webster Groves Sanitary Sewer District v. Smith, 337 Mo. 855, 87 S. W. (2d) 147, l. c. 151, we had under consideration this same act, and in speaking of the sections in question, we said:

"It is next contended that Sections 21 to 28, inclusive, are unconstitutional because authority is there given subdistricts to incur an indebtedness beyond annual income on a majority vote and in excess of 5 per cent of the value of the taxable property therein, contrary to Section 12 of Article 10 of the Constitution.

"It is provided in Section 25 of the act (Mo. Stat. Ann., sec.

11071e—28, p. 7431) that 'only those otherwise qualified voters in said subdistrict who own real estate therein, which real estate . . . will directly abut the lateral sewers contemplated . . . shall be entitled to vote' on the question of the issuance of subdistrict bonds. Section 26 (Mo. Stat. Ann., sec. 11071e—29, p. 7431) provides that an annual rental charge shall be collected 'from the owners of real estate abutting said lateral sewers' sufficient to pay the interest and sinking fund on said subdistrict bonds plus the estimated cost of maintenance of the lateral sewers. It is therefore apparent that these subdistrict bonds are to be issued against special assessments to be collected from the owners of real estate which directly abuts the lateral sewers. No general obligation is imposed upon all property owners within the district or subdistrict to pay these bonds or any part thereof.

"In the case of State ex inf. Gentry, Attorney General, v. Curtis, 319 Mo. 316, 4 S. W. (2d) 467, we held that bonds issued in benefit districts against special assessments are not indebtedness within the meaning of Section 12, Article 10.

"In the case of Embree v. Kansas City, etc., Road District, 257 Mo. 593, 1. c. 618, 166 S. W. 282, 289, when passing upon the right of a special road district to issue bonds in excess of the above-stated constitutional limitation, we said: 'The assessments authorized by said Article 7 of the statute are for the payment of local improvements, denominated special benefits to the land against which the assessments are made; and for that reason this court has uniformly held that such assessments do not constitute an indebtedness, within the meaning of the constitutional provision just quoted.' In that case it was argued, as it might have been here, that it was the duty of the road district (subdistrict in this case) to issue its bonds, and that therefore the indebtedness which the bonds represent must be that of the district and consequently paid by it. It was conceded that, if the bonds represented the obligation of the road district, the constitutional limit of indebtedness by the district had been exceeded. We held then that those bonds were not the obligation of the district and were valid. For the same reason the bonds of the subdistrict may be valid. They will not be valid unless they are only payable out of the rental charges provided for in the act and are not general obligations of the subdistrict. [Embree v. Kansas City, etc., Road District, supra, 257 Mo. 593, 1. c. 621, 166 S. W. 282.] It will be borne in mind that the bond which has been presented to respondent for registration is not a subdistrict bond. Relator calls attention to the fact that a subdistrict bond may not be issued. Since the constitutionality of that part of the act relating to subdistrict bonds was raised, we decide it now rather than await the probable presentation of the question later."

We have re-examined the authorities and have reached the con-

clusion that in the above case we correctly ruled that subdistrict bonds are issued as special assessments to be collected from the owners of real estate directly abutting the lateral sewers. The obligor in the bond is not the subdistrict, as the subdistrict is not a separate entity, but the obligor is the whole district. The bond, being payable only out of the revenue received from special assessments levied upon the benefited property, is not a debt within the meaning of Section 12 of Article X, of our Constitution.

■ Nor is Section 25 of the act void because it limits the right to vote in subdistrict bond elections to resident owners of real estate. The only property in a subdistrict is real estate which directly abuts the lateral sewers. In the case of Miners' Bank v. Clark, 252 Mo. 20, 158 S. W. 597, we held that a statute limiting the right to protest of a street improvement which was to be paid by special assessment against the abutting property to resident owners of property did not deny to nonresident owners equal protection of the laws or deny them due process of law.

In the case of Field v. Barber Asphalt Paving Company, 194 U. S. 618, 48 L. Ed. 1142, l. c. 1153, the Supreme Court of the United States said:

"The exact point of objection is that the improvement is not to be made if a majority of the resident owners of the property liable to taxation therefor shall file with the city clerk a protest against such improvement, which privilege of protest is not given to nonresident owners, thereby discriminating against them. It is well settled, however, that not every discrimination of this character violates constitutional rights. It is not the purpose of the Fourteenth Amendment, as has been frequently held, to prevent the states from classifying the subjects of legislation, and making different regulations as to the property of different individuals differently situated. The provision of the Federal Constitution is satisfied if all persons similarly situated are treated alike in privileges conferred or liabilities imposed."

In the Clarke case, supra, the statute limited the right to protest against the improvement to the resident owners of property which would be benefited by the improvement, while the statute now before us limits the vote in a bond election to the resident owners of property which will be benefited by the building of lateral sewers. We see no difference in principle between the two statutes, and rule against the contention of respondent.

■ Respondent further contends that Sections 22 to 28, inclusive, are invalid because the manner provided therein for the creation of subdistricts does not provide for a hearing for the landowner, and, therefore, violates the due process clause of the Constitution. The contention ignores the character of the subdistricts. They are not taxing districts. They are administrative units. The purpose

of forming them is to facilitate the orderly and proper construction of the lateral sewers. The landowner had his opportunity to be heard upon the organization of the whole district. The law under which it was organized contains the provisions here considered for the designation of particular areas for lateral sewers. The subdistricts are not separate entities. The bond tendered for registration is the bond of the Webster Groves Sanitary Sewer District, to be paid out of funds received from special assessments levied against real estate in the subdistrict. No taxes or other charges are levied on behalf of or by the subdistrict. The only taxes authorized by these sections in question are the assessments provided to defray the costs of the lateral sewers, and these are levied only upon property abutting such sewers.

The cases relied upon by respondent are not in point as illustrated by the case of Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330, 46 Sup. Ct. 141. In that case the court held a statute of the State of Texas void because it did not provide for a hearing of the landowners whose lands were liable for special assessments, and because the levy was not, in effect, directly made by the Legislature. In the case at bar the landowners of the subdistrict were given an opportunity to be heard when the district was formed by the circuit court.

Moreover, the assessments provided by the sections of the sewer law here in question are levied by the direct authority of the Legislature upon lands designated by it. The act itself provides that the assessments shall be imposed upon the property which abuts the proposed lateral sewer. This is a legislative definition of the boundaries of the area benefited by the lateral sewers. The assessments are to be in proportion to the assessed valuation of such property. This is a legislative declaration of the rule upon which the assessments are to be apportioned. Thus, the Legislature has in the act declared that property abutting the proposed lateral sewer will be benefited to an amount not less than the cost of the lateral sewer, and in proportion to the relative assessed valuation of the several pieces of property which abut the sewer.

In the case of Embree v. Kansas City & L. Blvd. Road District, 240 U. S. 242, 60 L. Ed. 624, l. c. 628, the Supreme Court of the United States said:

"The claim that the landowners are entitled to a hearing on the question whether the benefits in the different zones will be in accord with the graduated ratings of their lands is not seriously pressed upon our attention and requires but brief notice. The ratings are not fixed in the exercise of delegated authority, but by the statute itself, which must be taken as a legislative decision that in a district lawfully constituted, in the manner before indicated, the benefits to the lands in the different zones will be in approximate accord with the ratings named. This being so, no hearing is essential to give

effect to this feature of the apportionment. A legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power.''

We have held that the Webster Groves Sanitary Sewer District is a municipal corporation. [State ex rel. Webster Groves Sanitary Sewer District v. Smith, supra.] The validity of special assessments for public improvements by all municipalities, in which cases no hearing is had, rests upon the principle that the levying of the assessments and apportioning of the costs is fixed by direct legislative act and not by any delegated authority. We rule the act in question does not violate the due process clause.

The bond states that it is payable only out of funds which are to be received by the Webster Groves Sanitary Sewer District as ''rental charges'' in the nature of special assessments to be collected by the district from the owners of real estate abutting upon the lateral sewers in Subdistrict No. 17, which ''rental charges,'' in the nature of special assessments, will be a lien against the said real estate.

Section 26 of the act provides that the money shall be raised for the payment of interest and sinking funds on the bonds by directing that there be imposed a ''rental charge'' to be collected from the ''owners of the real estate abutting said lateral sewers.'' The ''rental charge'' shall be apportioned according to the assessed valuation of said real estate. Respondent contends that this section does not give the Webster Groves Sanitary Sewer District the authority to issue the bond in question. He construes the phrase, ''rental charges,'' to mean that the tax must be paid by the user of the sewer. It is to be noted that the tax is to be paid by the owners of the real estate and shall be apportioned according to the assessed valuation of the real estate. His construction would be unconstitutional because to collect from the landowners for the benefits which possibly a tenant, or perhaps no one, could receive would be taking his property without due process of law and without just compensation. [Etheredge v. City of Norfolk, 148 Va. 795, 139 S. E. 508.] Where a statute is capable of two interpretations, one of which is constitutional and the other unconstitutional, the courts will interpret the language in favor of the constitutionality of the law. [Darlington Lumber Co. v. Mo. Pac. Ry. Co., 216 Mo. 658, 116 S. W. 530.] In construing an act, the true intention of the framers must be followed, and where necessary the strict letter of the act must yield to the manifest intent of the Legislature. [City of St. Louis v. Christian Bros. College, 257 Mo. 541, 165 S. W. 1057.] With these rules in mind, we will proceed to construe this act.

In the case of Egyptian Levee Co. v. Hardin, 27 Mo. 495, we held

that where the tax levied "upon the landholders in the district," it was a special assessment for the benefit of the land.

In the case of Columbia Bottom Levee Co. v. Meier, 39 Mo. 53, we held an assessment made on the "owners of land" to be a special assessment against the land.

If the law be interpreted to provide for a personal charge for the use of the sewers, it would have to specify that the "rental charge" should be collected from the user and not the owner. Ownership of land would have no bearing upon the use. Construing together all the provisions of the act, a "rental charge" "collected from the owners of the abutting property," "apportioned according to the assessed value of the land" can only mean that the Legislature intended to create special assessments for special benefits to land abutting the sewers, and to create a lien on the land to secure the payments of the special assessments.

As the "rental charge" is a special benefit assessment against the "real estate abutting the laterals," it follows that a fair interpretation of Section 27 of the act would be that such charge constitutes a lien upon the land. That section states that delinquent "rental charges" "shall be collected in the same manner as taxes levied under the authority of this article for the payment of sinking funds and interest on other bonds of the district are collected." The provision for the collection of taxes for the payment of sinking funds and interest on the other bonds of the district are found in Section 9 of the act, the pertinent parts of which are as follows:

"The same (taxes) shall be collected and remitted to the Board of Trustees of the said sewer district by the collector of the revenue of said county at the time, in the manner, and by the same means as state, county, school and other taxes are collected and remitted. All of the laws, rights and remedies provided by the laws of this state for the collection of state, county, school and other taxes shall be applicable to the collection of taxes herein authorized to be collected."

In the case of State ex rel. Mispagel v. Angert, 127 Mo. 456, 30 S. W. 118, we construed a drainage district act which provides that the tax "shall be collected by the collector of the county in which the real estate is situated on which the tax is levied, and when the said tax shall be collected, the said collector shall pay the same over to the treasurer of the county in which the greater portion of said drainage district lies." In ruling the case, we said:

"That by the foregoing legislation the Legislature intended that a lien should be given for the drainage tax, to be enforced in the same manner as the State's lien for the other taxes extended on the tax book, is not only a fair and reasonable implication from the language used, but it is a necessary one to save the statute from perishing. Unless such was the intent, the Legislature did not only a vain and useless thing in passing the act, so far as any benefit is

to be derived therefrom in the future, but it laid a pitfall for the unwary and confiding, who have hitherto acted upon the faith of it.''

The Legislature evidently intended, by the language used in Section 9 and Section 27, to make the special assessment against the land a lien on the land; otherwise, the act of the Legislature would amount to a mere nullity.

We also think the Legislature meant that these assessments should be made against land and improvements when it said ''real estate abutting upon the laterals,'' it being very well known that improvements increase the benefits and increase the use of the sewers. The act does not mention land or improvements but uses the term ''real estate,'' which is universally defined to include the land and the improvements thereon.

■ Respondent objects to the manner in which the judges and clerks of the bond election determined the qualifications of the voters. Section 25 limits the right to vote to the resident owners of real property directly abutting the lateral sewers. No method is prescribed to determine the qualifications of the voters; nor is any method prohibited. The determination of the judges of election of the qualifications of a voter is final and conclusive in a bond election and cannot be inquired into. [State ex rel. Jackson County v. Waltner, 340 Mo. 137, 100 S. W. (2d) 272; Long v. Consolidated School District, 331 Mo. 302, 53 S. W. (2d) 867.]

■ Respondent also objects that the board of trustees of the district has exceeded its authority in providing that the annual levy shall be sufficient to produce the amount required for interest, sinking funds and maintenance, whereas he contends the law limits the levy to the exact amount required annually for these charges. Section 26 of the act states that the ''charge to be imposed shall not exceed the estimated amount necessary to be raised to pay'' interest, sinking funds and maintenance. This statute does not limit the charge to the exact amount required but only limits it to the ''estimated'' amount, which necessarily would include the expense of collection.

For the reasons stated, our peremptory writ of mandamus should issue. It is so ordered. All concur.